Charles HARRISON, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–83–0627–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 29, 1984.

Catherine Greene Burnett, Janet Seymour Morrow, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., J. Harvey Hudson, Dan Krocker, Asst. Dist. Attys., Houston, for appellee.

Before WARREN, LEVY and COHEN, JJ.

## OPINION

COHEN, Justice.

The appellant was convicted by a jury of aggravated rape. He pleaded true to one enhancement paragraph, and the jury assessed punishment at confinement for thirty-five years.

■ The first ground of error contends that the evidence, although sufficient to prove rape, was insufficient to prove aggravated rape. The indictment alleged that the appellant:

by acts, words and deeds ... did intentionally and knowingly place the Complainant in fear of serious bodily injury and death to be imminently inflicted on the Complainant.

The record shows that the complainant was an employee of the appellant, which caused them to be together at a remote rural location. The appellant made sexual advances which she refused, but the appellant persisted, finally forcing her to the ground. She testified that she screamed twice, but the appellant covered her mouth with his hand. He told her that he would "knock [her] out" and suggested that she cooperate. She testified that she feared being knocked out and thought she might die. No weapon was displayed or mentioned by the appellant at any time prior to or during the rape, although there was some discussion concerning guns after the rape as the two rode around in the appellant's car to other locations. When they stopped for gasoline at a service station, the complainant got out of the car and refused to get back in, whereupon the appellant left and the authorities were notified.

The appellant argues that the verbal threat to "knock out" the complainant, standing alone, does not constitute sufficient evidence of aggravated rape because it is insufficient to show that she feared the imminent infliction of serious bodily injury or death.

When reviewing the sufficiency of the evidence, we view it in the light most favorable to the jury verdict in order to determine whether any rational jury could have been convinced beyond a reasonable doubt of the appellant's guilt. *Carlsen v. State*, 654 S.W.2d 444 (Tex.Crim.App.1983).

The term "serious bodily injury" is defined by statute as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex.Penal Code Ann. section 1.07(34) (Vernon 1974). The Court of Criminal Appeals has on several occasions found

that serious bodily injury was caused by blows to the head. In *Johnson v. State*, 583 S.W.2d 399, 403 (Tex.Crim.App.1979), repeated blows to the head with a metal pipe created a substantial risk of death. In *Hatfield v. State*, 377 S.W.2d 647, 649 (Tex.Crim.App.1964), the defendant struck the victim in the face resulting in a cut lip and loss of teeth; and, in *Roberts v. State*, 99 Tex.Cr.R. 492, 269 S.W. 103, 105 (1924), the victim's skull was fractured by a kick to the head. In each case, serious bodily injury resulted from a blow to the head.

Common experience indicates that a blow to the head is contemplated by one who threatens to "knock you out". Thus, it was reasonable for the complainant, who was threatened with being knocked out, to fear that she was going to be struck in the head with sufficient force to cause her to lose consciousness. It is not unreasonable for the victim of such a threat to expect that such an attack might cause protracted loss or impairment of the function of a bodily member or organ, serious permanent disfigurement, a substantial risk of death, or even death itself. *Johnson v. State, supra, Hatfield v. State, supra, Roberts v. State, supra.* Thus, a rational jury could have been convinced beyond a reasonable doubt that the complainant submitted to intercourse out of a reasonable fear that she would sustain serious bodily injury if she did not submit. The first ground of error is overruled.

■ The third ground of error contends that the trial court erred by sustaining the State's hearsay objection, thus refusing to allow the appellant to impeach the complainant's testimony that she had not asked a bartender for Mandrex.

Appellant met the complainant one day before the offense at a topless bar where she was applying for a job as a waitress. Defense counsel asked the bar manager, Frank Olveda, the following:

Q: Do you know whether or not during the time she was there she had any conversation with the bartender?

A: At the time I arrived, before I arrived, I don't know. And when I was there, not until she left.

Q: She had a conversation with the bartender when she left?

A: She asked him something.

Q: And do you know what it was she asked the bartender when she left?

A: Yes sir, I do.

Q: What was that?

The appellant then offered Olveda's testimony that he heard the complainant ask the bartender for Mandrex, a controlled substance. The State made a hearsay objection, which the court sustained, rejecting the appellant's argument that the testimony was not hearsay because it was offered only for impeachment, not to prove the truth of any matter asserted in the statement. The appellant suggested that the State might be entitled to a jury instruction that such testimony be considered only as impeachment, not as substantive evidence.

The State's sole trial objection was that Olveda's testimony was hearsay. The testimony was not hearsay because it was not an out of court statement offered in evidence to prove the truth of the matter asserted in the statement. The complainant's alleged statement concerning Mandrex was not an assertion of fact at all, but merely a question. Such evidence is not hearsay. *Girard v. State*, 631 S.W.2d 162 (Tex.Crim.App.1982); *Compton v. State*, 607 S.W.2d 246 (Tex.Crim.App.1979); *Nixon v. State*, 587 S.W.2d 709 (Tex.Crim.App.1979); See and compare Tex.R.Evid. 801(c), (d), (e)(2)(A); Fed.R.Evid. 801(c), (d)(2)(A). Therefore, the State's hearsay objection was without merit and should have been overruled.

The State argues on appeal that the evidence was properly excluded, not as hearsay, but because it only involved a collateral matter, and the right to impeach the credibility of a witness does not extend to such collateral matters.

The appellant testified that the complainant consented to intercourse for pay with him the day after they met at Olveda's bar, while she was under the influence of mari-

juana, and then, when the appellant did not pay, she falsely claimed rape because she was afraid to return to her violent boyfriend without drug money.

Frank Olveda testified that the complainant was "high" and staggering when she applied for work, although she did not appear to have been intoxicated from alcohol use. Olveda refused her application because he thought it was unsafe for her to work in that condition. There was testimony that her "old man", with whom she lived, was "a doper". The appellant testified that, on the day of the offense, the complainant had initially said that she could not work because she and her boyfriend had been "loaded" the night before, but that she needed money because her boyfriend had used all their money for drugs.

■■■■ Great latitude should be allowed the accused to show a witness's motive to falsify his testimony; however, trial courts have considerable discretion as to how and when such a motive may be proved and as to what collateral evidence is material for that purpose. *Cloud v. State*, 567 S.W.2d 801, 802 (Tex.Crim.App.1978). The extent to which a witness may be cross-examined for the purpose of showing bias on a collateral matter rests in the sound discretion of the trial judge, who must balance the probative value of the evidence sought to be introduced against the risk its admission may entail. The potential risks include: 1) the possibility of undue prejudice, embarrassment or harassment to either a witness or a party; 2) the possibility of misleading or confusing a jury; and 3) the possibility of undue delay or waste of time. *Cloud v. State, supra* at 802–03. The same factors control this case, although the issue is the scope of direct examination, not cross-examination. *Koehler v. State*, 679 S.W.2d 6, 9–10 (Tex.Crim.App.1984); *Jackson v. State*, 482 S.W.2d 864, 867 (Tex.Crim.App. 1972).

■■■■ Professor Ray, in his treatise, *Texas Law of Evidence*, sections 683–84, (West 1980), has stated:

The chief reasons for excluding contradiction on collateral matters are reasons of policy. First, too great an inconvenience would result if every alleged error could be investigated. Much time would be wasted and the issues confused. Second, it would be unfair to the witness to expect him to come prepared to meet any error that might be alleged, although entirely beyond matters in litigation.

Although the rule that error on collateral matters may not be shown is well established, the rule itself marks out no definite line of exclusion. The difficult question is left unanswered. What matters are collateral and what are not? Only one satisfactory test appears to have been devised.... In Professor Wigmore's words it is: "Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?" ... The test is simple, definite and easy of application, yet, despite this, it has been accepted by very few jurisdictions in this country. The Texas courts appear to have no definite guide. They employ such terms as irrelevant, collateral and immaterial, and let the decision hinge on the particular circumstances of each case. So much depends on the individual opinion of the judges that about all it is possible to do here is to illustrate by specific instances some of the matters which have been held collateral and some which have not. The hope is expressed that some definite test of collateralness will soon be adopted with its application left largely to the discretion of the trial court.

The appellant relies on *Harris v. State*, 642 S.W.2d 471 (Tex.Crim.App.1982), and *Thomas v. State*, 669 S.W.2d 420 (Tex.App.—Houston [1st Dist.] 1984, pets. ref'd). In *Harris*, a death penalty case, the defense was not allowed to cross-examine a juvenile accomplice witness to show that she was accused of the same offense for which the defendant was on trial. In *Thomas*, a rape of a child case, the victim denied having made false accusations of rape allegedly occurring at the same time period as the

offense on trial, and the defense was not allowed to question her mother, aunt, cousin and neighbor to show that she had made false rape accusations previously. The errors in both *Harris* and *Thomas* required reversal. The type of evidence excluded in those cases was not collateral, however; it had a direct bearing on the events for which the defendant was on trial and on the complainant's credibility concerning them.

Authorities supporting the State include *Driehs v. State*, 301 S.W.2d 123, 124 (Tex. Crim.App.1957) and *Speck v. State*, 148 Tex.Cr.R. 443, 188 S.W.2d 184, 185 (1945), both of which were reversed because the State was wrongly permitted to impeach defense witnesses on collateral matters. In *Driehs, supra*, a driving while intoxicated prosecution, police testified that the defendant resisted arrest, which the defendant denied. The State was allowed, over objection, to cross-examine him concerning whether he had resisted arrest during a prior arrest. When he denied this, the arresting officer on the prior offense testified that Driehs had resisted at that time. The Court rejected the claim that the evidence was admissible as impeachment. It stated:

> *In order to agree with such contention, it would be necessary to hold that the details of the prior offense were material in the present trial. We do not so conclude.* The general rule is ... as follows: impeaching a material witness on an immaterial matter is reversible error, because, by discrediting the witness and showing the jury that upon a immaterial issue he had testified falsely, it is calculated to make the jury believe that he may have testified falsely in regard to other matters which were material. (emphasis supplied)

In *Driehs*, unlike the case at bar, the defendant objected when the State raised the collateral matter. More importantly, unlike the *Driehs* case, Olveda's testimony did not involve any prior offense.

Similarly, in *Speck v. State, supra*, a driving while intoxicated case, a defense witness testified that neither she nor the defendant was drinking or drunk. On cross-examination, she was asked if she had told a prosecutor that she and the defendant had been drinking. She denied any such statement, whereupon the prosecutor testified that the witness had stated that she, not the defendant, had been drinking. The Court held that whether the defense witness was intoxicated during the offense was irrelevant to whether the defendant, Speck, was intoxicated. The Court stated:

> For purposes of impeachment, anything she might have said about appellant's intoxicated condition at the time of his arrest might have become admissible for a limited purpose, but *anything relative to Miss Lane's drinking could hardly* be binding on appellant, nor *have any probative force relative to his intoxicated condition....*

Such testimony might have been admissible herein as an impeachment of her had the Assistant County Attorney testified that she had told him that appellant was drunk, or had been drinking, but it is to be noticed that her statement to the officer merely said that she, the witness, had been drinking, and *the drinking of Ms. Lane, being an entirely collateral matter, was not admissible against appellant as a matter of impeachment.* (emphasis supplied)

Applying the test advocated by Professors Wigmore and Ray, we conclude that the fact that the complainant was seeking a Mandrex tablet could have been shown independently of the contradiction. Olveda testified before the jury that the complainant was in an impaired condition, possibly due to drug intoxication, when she met the appellant on the day before the crime. The appellant testified to the complainant's statement that she was so "loaded" the night before the offense that she was unable to work the next day and to her marijuana use just prior to the intercourse. The appellant testified that she consented to intercourse while intoxicated following the use of marijuana and did so in order to

earn money to purchase drugs. Such testimony showed the complainant's mental and physical condition on the day and night immediately preceding the offense and on the day of the offense. The testimony indicated that she was in a possibly continuous state of drug intoxication over a two day period during which time she was seeking money to buy more drugs. Olveda's testimony that she was asking for Mandrex one day earlier, at the same time she met the appellant, thus significantly supported other defense testimony. It indicated that she was a drug user who was in need of and was seeking both drugs and money shortly before the intercourse occurred. If believed, this established a motive for her to have consented, the same motive claimed by the appellant.

In *Wallace v. State*, 679 S.W.2d 1 (Tex. Crim.App.1983), opinion on rehearing, October 31, 1984, the court held:

"Because it is relevant as a circumstance tending to prove the commission of the offense, evidence may always be introduced by the State which 'fairly tends to raise an inference in favor of the existence of a motive on the part of the accused to commit the alleged offense.' *Porter v. State*, 623 S.W.2d 374, 386 (Tex.Crim.App.1981)."

If the State can always show motive because it tends to prove the commission of the offense, the appellant should have been allowed to use Olveda's excluded testimony which tended to prove the complainant's motive to consent to intercourse.

Under these circumstances, we believe the evidence was more probative than that in *Speck* because it was part of a direct and continuous chain of evidence indicating the victim's use of drugs and need for money shortly before the crime. It furnished a motive for her to prostitute herself, i.e., the need to obtain drugs. It showed a fact which, if believed, would have strengthened the defense claim of consent. The appellant was entitled to try to prove that the victim's condition on the day and night before the crime and on the day of the crime was that of continual intoxication which could, as claimed by defense testimony, have influenced her judgment in consenting to an act of sexual intercourse. The jury should not have been deprived of this relevant information. It should have been allowed to hear Olveda's testimony and decide whether he or the complainant was worthy of belief. This testimony, if believed by the jury, would have placed the victim in her proper perspective, influenced the jury's impression of her credibility, which was the most vital issue in the case, and strengthened the appellant's defensive theory.

We further conclude that Olveda's excluded testimony was admissible for impeachment, even if it was not otherwise admissible. The policy reasons for limiting impeachment on collateral matters suggested in *Cloud v. State*, and by Professor Ray are not present here. The first reason was to avoid wasting time or confusing the jury. Nothing indicates that the excluded testimony would have caused undue delay or confused the jury. Olveda's testimony before the jury occupies only 18 pages of a 588 page statement of facts. The entire description of the excluded testimony made when it was offered was that "during the time she was there, he heard her ask the bartender for Mandrex." This does not indicate that an area was being opened up that would have created undue delay. The evidence would have created a conflict in the evidence, but nothing indicates this would have mislead or confused the jury. Juries are well equipped to resolve conflicts in the evidence. Indeed, that is their purpose.

It is true, as Professor Ray has stated, that "it would be unfair to the witness to expect him to come prepared to meet any error that might be alleged, although entirely beyond matters in litigation"; however, Olveda's testimony was not entirely beyond the matters in litigation. It was directly linked to the initial meeting of the appellant and the complainant, one day before the offense, and concerned the same

condition of drug use which defense testimony indicated continued until the day of the offense.

Finally, the question excluded was directed to Olveda, not to the complainant; therefore, it would not have caused her any undue harassment or prejudice. Olveda's excluded testimony referred to the same events brought out without objection by the State and the appellant. If believed by the jury, it showed that the State's one essential witness had erred or lied under oath. The probative value of such evidence was potentially great, and the risks described in *Cloud v. State* and by Professor Ray were either insignificant or non-existent.

■ Impeachment testimony like Olveda's should have been admitted in order to expose before the jury allegedly perjured or erroneous testimony. It was the jury's special task to decide which was true, the complainant's testimony or Olveda's. The need to expose perjury is so important that even evidence obtained in violation of the United States Constitution may be used for this purpose. *See Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954); *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). In *Walder*, the Court allowed a defense witness to be impeached on a clearly collateral issue in order to expose what the government claimed was perjury. This parallels the instant case, except that the argument for admission here is stronger than in *Walder* because Olveda's testimony was not illegally obtained, did not reveal extraneous crimes, and was more closely related to the offense on trial. If, as held in *Walder* and *Harris*, even the U.S. Constitution provides no shield for alleged perjury by defense witnesses, then the court-made rule against collateral impeachment should not provide any greater protection for alleged perjury by government witnesses.

Ground of error three is sustained.

The judgment is reversed and the cause is remanded for a new trial.