**Richard HAYNES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–85–0433–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 12, 1987.

Rehearing Denied March 19, 1987.

Kristine C. Woldy, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Kathlyn Giannaula, David Knight, Harris County Asst. Dist. Attys., Houston, for appellee.

Before WARREN, HOYT and DUNN, JJ.

## OPINION

WARREN, Justice.

A jury convicted the appellant of the offense of aggravated sexual assault with a child; the trial court assessed punishment at 50 years imprisonment.

The appellant brings four points of error, challenging (1) the failure of the trial court to require the filing of portions of the statement of facts; (2) the exclusion by the court of evidence that, allegedly, contradicts the testimony of the complainant; (3) alleged prosecutorial misconduct throughout the trial; and (4) the effectiveness of the assistance rendered by appellant's trial counsel. We affirm.

The record reflects that the complainant lived with her mother and stepfather, and that, prior to October 6, 1984, she visited her natural father, Ricky Mimms, on alternate weekends, pursuant to a custody arrangement agreed to by her natural parents. Mimms lived with his wife and his stepdaughter. In 1984, the complainant was six years old, and her stepsister was ten.

The complainant testified that, on October 6, 1984, she was sexually abused by her father and his friends, one of whom was the appellant, Richard Haynes. Her testimony was the only direct evidence linking the appellant with the offense.

On the morning of the offense, she testified, Mimms and Robert Gildon picked her up at her home and took her to her father's house, where she was to spend the night. The appellant was one of several adults at

her father's house; the stepsister was outside playing. The complainant testified that her father told her to take off her panties; that after she did so, he first inserted his finger into her vagina, and then engaged in an act of sexual intercourse with his daughter. She testified that her father had taught her that this act was called "digging." He then placed his penis in his daughter's mouth.

After this, the appellant assaulted her in the same manner. Then, her stepmother and Anna Gildon took turns placing their mouths in the area of the complainant's vagina, and requiring her to do the same to them.

The complainant testified that she was then taken to the home of the appellant and his co-defendant, Donald Thompson, where Thompson engaged in intercourse with her. She then returned to her father's house, where she spent the night.

The complainant testified that her father had sexually abused her for as long as she had been visiting him. She said that her father had threatened to kill her mother and her family if she ever reported what happened at her father's house.

On cross-examination by Donald Thompson's attorney, the complainant testified that Richard Haynes, the appellant, had "dug" her before. During the same cross-examination, she testified that, on Sunday, October 7, she saw someone "digging" on her ten-year-old stepsister.

During cross-examination by the appellant's attorney, she confirmed that she and her stepsister were each sexually abused on Sunday, but that nothing had happened to the ten-year-old on Saturday. She identified the appellant as one of the people who was again at her father's house on Sunday.

The complainant's mother testified that her daughter refused to talk about her weekend when she returned home on Sunday night. On Monday, the mother found a pair of her daughter's panties, and observed a discharge on them. On Tuesday, the complainant told her mother the details of the sexual assaults by her father and his

friends. The mother contacted Children's Protective Services.

The gynecologist who treated the complainant testified that her examination of the girl indicated a history of sexual abuse. The condition of the complainant's vagina indicated repeated trauma in the recent past. The almost complete absence of hymenal tissue, she said, was consistent with penetration, rather than masturbation. The doctor testified that her findings were consistent with five adult males having penetrated the complainant's vagina four days prior to the examination.

The complainant's stepsister testified that she had not been sexually abused on October 7, nor had she ever been sexually abused. She testified that she was outside playing on October 6, while the complainant was inside with the adults. A doctor who examined the stepsister in November testified, outside the presence of the jury, that the stepsister's hymen and anal ring were intact. He testified that the stepsister had not been penetrated by a penis, but that his examination could not establish that she had never had a finger placed in her vagina, or had never engaged in oral sex.

The appellant testified that he saw the complainant at her father's house, and at his own home, on the date in question. He denied that he had engaged in sex with her, and stated that no other adult had abused her on October 6.

■ In his first point of error, the appellant complains that the trial court erred, because the record does not contain the court reporter's transcript of the voir dire examination, or of pre-trial hearings held on January 24, 1985, March 11, 1985, and March 18, 1985. The record does not show that trial counsel ever requested that the court reporter transcribe the voir dire examination, or the hearings in question, or that the proceedings were recorded. The appellant's counsel objected, on May 12, 1986, to the exclusion of those items from the record.

The right to have proceedings transcribed by the court reporter is waived when transcription is not requested. *Wells*

*v. State,* 578 S.W.2d 118, 119 (Tex.Crim. App.1979). The appellant's first point of error is overruled.

■ In his second point, the appellant urges that the trial court erred when it refused to allow the defense to present evidence that the complainant's stepsister had been medically examined in November 1985, and that her hymen and anal ring proved to be intact.

Outside the presence of the jury, Dr. Raymond Cohen testified that he had examined the stepsister on November 13, 1985, at which time he made a visual inspection of her genital area. He testified that she had "an abnormal hymen which was intact, no tears in the hymen and the anal ring was intact as well." He further testified that "[t]hat doesn't mean there was· no molestation, don't misunderstand." On cross-examination, the doctor acknowledged that, although a fractured hymen would not heal, any evidence of sexual assault other than penetration would tend to dissipate over a period of time.

The appellant argues that this medical testimony contradicts the testimony by the complainant on cross-examination that her stepsister was "dug on" on Sunday, October 7, and corroborates the stepsister's account. He contends that the medical evidence was material to the issue of the complainant's credibility, and that the trial court committed reversible error by excluding it.

■ The determination of this point of error depends, in part, on whether the doctor's testimony related to a material or a collateral issue in this case. The general rule is that, while the testimony of a witness may be contradicted with respect to all material matters, a witness may not be contradicted as to immaterial or collateral matters. *Harrison v. State,* 686 S.W.2d 220, 223 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd).

One test of whether an issue is collateral is whether the fact to which the issue relates could have been shown in evidence for any purpose independently of the contradiction. *Id.* (citing 1 R. Ray, *Texas Law of*

*Evidence Civil and Criminal* §§ 683–84 (Texas Practice 3d ed. 1980)). In *Harrison v. State,* this Court found that the complainant in an aggravated rape prosecution could be impeached on her testimony that she had never tried to buy a controlled substance from the appellant. We reasoned that testimony she had attempted such a purchase would have been admissible to support the defensive theory that the complainant consented to sex in order to earn money to purchase drugs. 686 S.W.2d at 225.

Under that test, the issue of whether the stepsister in our case was assaulted is a collateral issue, and the trial court did not err. The testimony of the complainant that she saw someone "digging" on her stepsister did not link the appellant to that incident. The medical evidence could not have been shown in evidence for any purpose other than the contradiction, and was therefore properly excluded. Furthermore, the evidence was cumulative to that of complainant's stepsister, who impeached complainant's testimony by testifying that she, the stepsister, had not been "dug" as complainant alleged.

A recent case adopts a broader definition of materiality in cases of child sexual abuse. *Polvado v. State,* 689 S.W.2d 945, 950 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd). In that case, the complainant's brother corroborated his sister's testimony, and he also alleged that he had been sexually abused by the appellant. The appellant was not allowed to cross-examine the boy as to whether the allegations were baseless. The court stated:

> [W]e are mindful that no charge is more easily made and more difficult to disprove than a sex charge, particularly if made by a young child. From the very character of the offense involved the jury often has little to go on in such cases. They may have nothing more than the testimony of a young child and the denials of the defendant. We hold that the separate allegations of sexual misconduct made by the boy are not collateral to the main issue at trial. The boy's separate allegations, if proved

false, would cast doubt on the complainant's credibility.

*Id.* (citations omitted). Under this test, almost any evidence bearing on a child's credibility is material in cases of sexual abuse.

Unlike the young boy in the *Polvado* case, the stepsister in our case did testify, contradicting the complainant's testimony. The medical evidence that was excluded was less positive than the stepsister's testimony, because it did not directly contradict the complainant's account, though it did establish that the stepsister's hymen was intact. The complainant's testimony relating to the Sunday incident was incompletely developed in responses to leading questions on cross-examination, and was not presented as a part of the State's case. On cross-examination, the appellant did not develop the complainant's testimony other than to adduce that she had seen someone "digging" on her stepsister on Sunday. The possibility that this term referred exclusively to vaginal penetration was not raised.

Although the credibility of the complainant is a material fact issue under the *Polvado* rule, the medical testimony that appellant asserts impeaches her credibility was not admissible unless it was relevant to that issue, i.e., unless it tended to make the proposition at issue more or less probable. *Stone v. State*, 574 S.W.2d 85, 89 (Tex.Crim.App.1978); *see also*, Tex.R.Crim. Evid. 701. The doctor's own testimony was that the results of his examination did not refute the complainant's testimony that her stepsister had been sexually molested, because the test only showed the girl had never been penetrated. The trial judge properly acted within his sound discretion in deciding that the evidence was irrelevant because it had no probative value.

The exclusion of testimony offered for the purposes of impeachment must be considered in light of other testimony that was admitted. *Carrillo v. State*, 591 S.W.2d 876, 887 (Tex.Crim.App.1979). The medical evidence proved less than did the unequivocal testimony of the stepsister, which was admitted. The doctor who sponsored the

evidence testified that his examination did not rule out the possibility of molestation. The second point of error is overruled.

■ In his third point of error, the appellant contends that the trial court erred by permitting the prosecutor "to strike at Appellant over the shoulders of his attorney." The appellant lists 29 instances in which, it is contended, the prosecutor wrongly accused the attorneys for both defendants of improper conduct.

In order for a disparaging comment directed at defense counsel to be deemed improper, it must be "directed at appellant via his counsel, for the purpose of inflaming the minds of the jurors to the prejudice of the accused...." *Todd v. State*, 598 S.W.2d 286, 297 (Tex.Crim.App.1980). Four of the remarks complained of were made outside the presence of the jury and thus could not have harmed the appellant. Most of the remaining comments were made as part of objections to the the the mode of examination and, though strongly worded, were legal objections that in no way disparaged the appellant.

The record reflects that the trial lasted six days, that the materiality of much of the testimony was contested, that motions in limine were offered by both sides, and that both sides made numerous, strongly worded objections in their attempts to control the course of the testimony offered at trial. At no time did the appellant's counsel object to the comments that are complained of on appeal. None of the comments were personally directed at the appellant, nor were they of such an inflammatory nature that an instruction to the jury, which was not requested, could not have cured any harm to the appellant. The third point of error is overruled.

■ In his fourth point, the appellant claims that he was deprived of the effective assistance of counsel at trial, because two witnesses, a caseworker for Children's Protective Services and a clinical psychologist, were allowed to testify, without objection by the defense, that they found the com-

plainant's report of sexual abuse to be credible.

The appellant argues that this testimony improperly bolstered the testimony of the complainant, and that the bolstering testimony may have made the difference in the jurors' minds, because the fact that the jury deliberated for five hours shows that they had a difficult time reaching a verdict.

 The standard by which attorney performance is measured is that of reasonably effective assistance. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). An appellate court must review the "totality of the representation" for evidence of reasonably effective assistance. *Hutchinson v. State,* 663 S.W.2d 610, 612 (Tex.App.—Houston [1st Dist.] 1983, pet ref'd). Isolated instances in the record that reflect errors by counsel do not, generally, establish ineffective assistance. *Moore v. State,* 700 S.W.2d 193, 205 (Tex.Crim.App.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1167, 89 L.Ed.2d 289 (1986).

The record shows that, as a whole, the appellant's trial counsel rendered reasonably effective assistance. Given the sensitive nature of the subject of the trial testimony, he showed that he was capable in eliciting testimony from the appellant's own witnesses, and that his cross-examination of the State's witnesses was reasoned and skillful. Counsel thoroughly cross-examined Anita Cook, the caseworker, regarding the basis of her opinion of the complainant's credibility. Dr. Brown, the clinical psychologist, was also thoroughly cross-examined, and counsel used the examination to develop a defensive theory: that the complainant's account could have been shaped and bolstered, to some extent, by another person.

Counsel's failure to object to the bolstering testimony can not be deemed a denial of effective assistance. It was a reasonable strategy for counsel to act as he did; cross-examination exposed the basis of the opinion testimony, and allowed the development of a defensive theory.

The appellant's fourth point of error is overruled.

The judgment is affirmed.