Charles **HARRISON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. A14–92–00598–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 5, 1992.

Discretionary Review Refused Jan. 20, 1993.

Robert A. Morrow, III, Houston, for appellant.

Mary Lou Keel, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

ELLIS, Justice.

This is an appeal from the denial of a writ of habeas corpus. Appellant, Charles Harrison, filed the application seeking to avoid retrial for aggravated rape. In two points of error, appellant contends the trial court erred in denying his writ of habeas corpus because after a six and one-half year delay, any prosecution would violate his right to due process and speedy trial under the United States and Texas Constitutions. We affirm.

On September 12, 1983, appellant was found guilty of aggravated rape and sentenced to thirty-five years in the Texas Department of Corrections. His conviction was reversed on November 29, 1984. The appellate court had found that the trial court's exclusion of part of Frank Olveda's testimony was error. Mr. Olveda had been prepared to testify that the complainant had asked a bartender for Mandrex, a controlled substance. The First Court of Appeals found that this testimony should have been admitted because "allegedly perjured or erroneous testimony" should be exposed to the jury. *Harrison v. State,* 686 S.W.2d 220, 226 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd). Significantly, the excluded testimony went to the issue of consent. Mr. Olveda died on September 13, 1983, just one week after appellant's conviction.

On February 15, 1985, a few months after the appellate court's reversal and granting of a new trial, appellant was released on bond. On July 24, 1985, the State's petition for discretionary review was denied. The First Court of Appeals issued its mandate of reversal on August 16, 1985, but the mandate was never returned. After the District Clerk's office called on January 16, 1992 to say there was a missing mandate, the First Court of Appeals issued a duplicate.

Pursuing a new job opportunity, appellant and his wife moved to Kentucky in 1990. On February 28, 1992, an extradition request was sent to Kentucky for his return. After he was arrested, appellant made an extradition bond. Appellant voluntarily came to Harris County on March 11, 1992 and posted an appearance bail bond.

In his first point of error, appellant claims that the trial court erred in denying his writ of habeas corpus because any prosecution would violate his right to due process and a speedy trial under the United States Constitution. In particular, appellant points to the more than six year delay from the time when the State's petition for discretionary review was denied, and the reinstitution of prosecution in the District Court.

■ As due process claims based on delays in the appellate process are treated the same as speedy trial claims, we must look to the United States Supreme Court decision of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *See, e.g., United States v. Johnson*, 732 F.2d 379, 381–82 (4th Cir.1984), *cert. denied*, 469 U.S. 1033, 105 S.Ct. 505, 83 L.Ed.2d 396 (1984); *United States v. Antoine*, 906 F.2d 1379, 1382 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 398, 112 L.Ed.2d 407 (1990); *Coe v. Thurman*, 922 F.2d 528, 532 (9th Cir.1990). This decision requires us to weigh the conduct of the prosecution with that of the defendant. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2191–92. In particular, although the United States Supreme Court has set out several factors to use in weighing this conduct, we must approach every case on "an *ad hoc* basis". *Id.* Some of the factors crucial to our analysis include: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Id.* We must examine each one of these components.

## I. Length of Delay

The length of the delay is not the determining factor, it is in the words of the United States Supreme Court, "a triggering mechanism." *Id.* "Until there is some delay which is presumptively prejudicial, [it is not necessary to inquire] into the other factors that go into the balance." *Id.* Thus, it is the six and one-half year delay that triggers the consideration of appellant's speedy trial claim.

## II. Reason for the Delay

■ The delay in the instant case was caused by a lost mandate of reversal. Two clerks at the First Court of Appeals testified that although it is rare, mandates are sometimes not received by the District Clerk's office. Because it was lost somewhere between the appellate court clerk, and the district court clerk, the delay can not be attributed to either appellant or the State. Moreover, as the trial court found "that there was no intentional act on the part of the State", and as issuance of mandates are purely a judicial clerical function, any error can not be assigned to the prosecution. *See* TEX.R.APP.P. 86. In addition, although the trial court found that there was negligence on the part of the State, it stated that "the prosecutor's office had no more knowledge, notice or evidence of the lost mandate than the defendant." Since "the conduct of both the prosecution and the defendant are weighed", *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192, and the prosecution was not accountable for this delay, it is appellant's conduct which is determinative.

## III. The Defendant's Assertion of His Right

■ "[D]efendant's assertion of or failure to assert his right to a speedy trial is

one of the factors to be considered in an inquiry into the deprivation of the right." *Id.* at 528, 92 S.Ct. at 2191. "The defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 531–532, 92 S.Ct. at 2192–2193. Moreover, "[w]e hardly need add that if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine." *Id.* at 529, 92 S.Ct. at 2191.

Appellant testified that he understood that there would be a new trial and that he had known of this possibility since the summer of 1985. In fact, although testimony revealed that his relationship with his appellate lawyer was terminated after the State's petition was denied, his lawyer, Ms. Burnett, fully apprised him of his right to a new trial. Indeed, as appellant even testified, she advised him of his rights far beyond the time it was her duty to do so.

Ms. Burnett told appellant that because there had been a reversal, a new trial was inevitable. However, she did tell appellant that there were benefits in waiting. Specifically, if appellant could live an exemplary life, this could be beneficial in any future sentencing proceeding. She also said that due to the court's backlog, appellant may never go to trial.

Appellant testified that although he knew he had the right to a new trial, he never requested one. Indeed, appellant exclaimed that "a person can go down and ask for a new trial but they would have to be crazy to do that after just spending 19 months in prison". Therefore, appellant never demanded a speedy trial even though he knew he had the right to do so. His decision was thus not a product of ignorance but that of a gamble. Although he knew the possibilities, he testified that he simply hoped it would all just go away. In short, appellant simply chose to take his chances and enjoy his freedom.

As in *Barker v. Wingo*, appellant "hoped to take advantage of the delay in which he acquiesced, and obtain a dismissal of the charges, but he definitely did not want to be tried." *Id.* at 535, 92 S.Ct. at 2194. As appellant's failure to assert his speedy trial right is entitled to the strongest weight, it is this third factor which tips the balance against appellant. In gambling that his number would not come up, appellant has waived his rights. *Id.* at 529, 92 S.Ct. at 2191.

## IV. Prejudice to the Defendant

Although appellant has waived his right to a speedy trial by failing to assert that right, we must still determine whether appellant has been prejudiced. *Id.* at 532, 92 S.Ct. at 2193. Prejudice is "assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Id.* Specifically, the Sixth Amendment was designed to be a protective shield serving "(i) to prevent oppressive pretrial incarceration pending appeal; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last." *Id.*

In determining whether appellant's defense was impaired by the delay, the date of Mr. Olveda's death is important. Because his death occurred just one week after appellant's conviction, neither the prosecution nor the clerk's office can be charged. On the contrary, any resulting prejudice caused appellant can only be charged to chance. Thus, while it is true that Mr. Olveda's testimony was critical to a retrial, there is no correlation between his death and the delay.

Although the Sixth Amendment was also designed to prevent oppressive pretrial incarceration, appellant has not been oppressed. Indeed, shortly after his case was reversed, appellant was released on bond. Nor has he been overly anxious or concerned. Rather, appellant has only failed to assert his speedy trial right because he did not want to. Appellant even stated in court that he would have to be crazy to do so. Lastly, any delay has only benefitted not prejudiced appellant. He has been able

to both enjoy his freedom and build a future sentencing record.

We are reluctant to hold that appellant was denied this constitutional right on a record that strongly indicates that appellant did not want a speedy trial. We find that appellant was not seriously prejudiced by the delay, and did not want a speedy trial. Therefore, he was not deprived of his rights to due process and speedy trial under the United States Constitution. Appellant's first point of error is overruled.

Appellant's second point of error argues the same due process and speedy trial claims under the Texas Constitution. In bringing this point, appellant suggests that his State claim is entitled to a more favorable assessment than his federal claim. In relying on authorities that employ the United States Supreme Court *Barker v. Wingo* analysis, appellant cites no authority in support of his state claim. *See McCambridge v. State*, 712 S.W.2d 499, 502 n. 9 (Tex.Crim.App.1986). Moreover, the Court of Criminal Appeals has consistently interpreted the State speedy trial right in accordance with the Federal right, and *Barker v. Wingo* governs the analysis of the federal claim. *See Deeb v. State*, 815 S.W.2d 692, 704 (Tex.Crim.App.1991); *Chapman v. Evans*, 744 S.W.2d 133, 135 (Tex.Crim.App. 1988); *Hull v. State*, 699 S.W.2d 220, 221 (Tex.Crim.App.1985); *Cook v. State*, 741 S.W.2d 928, 940 (Tex.Crim.App.1987). Our disposition of appellants first point of error, thus applies equally to his second. Therefore, appellants second point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.