Herminio Colunga **TORRES**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 13–89–477–CR.

Court of Appeals of Texas,
Corpus Christi.

April 18, 1991.

A. Peter Thaddeus, Jr., Brin & Brin, Mauro Barreiro, Mark Alexander, McAllen, for appellant.

Rene Guerra, Dist. Atty., Edinburg, for appellee.

Before NYE, C.J., and HINOJOSA and BENAVIDES, JJ.

## OPINION

HINOJOSA, Justice.

A jury found appellant guilty of aggravated sexual assault and assessed his punishment at 42 years in prison. We affirm.

The victim, a twenty-year-old woman, testified that she heard that appellant was looking for someone to work in his house. She telephoned him, and he later picked her up and took her to his apartment. She cleaned and worked around his apartment during the day. That evening, appellant threatened her with a gun and forced her to engage in sexual intercourse. She tried to escape from the apartment during the night, but appellant forced her to remain with him. The following morning, appellant also forced her to remain with him while he took his little girl to school and ate breakfast at a restaurant. She did not flee during breakfast because she was afraid of what appellant would do to her. Later, appellant and the victim returned to his apartment, where he again forced her to go to bed. When the telephone rang, she escaped appellant's grasp and ran to a nearby car wash where one of the employees, Jose Luis, gave her a ride to her aunt's house. During the ride, she told Luis what had occurred. After going to her aunt's house, she went to the police.

■ In his first point of error, appellant contends that the trial court committed reversible error when it refused to give restricted definitions of "intentionally," "knowingly," and "recklessly." [1] Appel-

---

1. The mental state "reckless" was not relevant to the aggravated sexual assault paragraphs.

"Reckless" was used only in the instruction on the lesser included offense of assault. Because

lant's point is premised on the rule that the charge should contain only the portion of the mental state definition applicable to the type of offense alleged.[2] *See Kinnamon v. State,* 791 S.W.2d 84, 87–89 (Tex.Crim. App.1990); *Alvarado v. State,* 704 S.W.2d 36, 37–40 (Tex.Crim.App.1986); *Garza v. State,* 794 S.W.2d 497, 500–01 (Tex.App.— Corpus Christi 1990, pet. ref'd); *Saldivar v. State,* 783 S.W.2d 265, 266–68 (Tex.App. —Corpus Christi 1989, no pet.).

Although we find appellant's general statement of the law to be sound, we find that his trial objections and his appellate brief are confusing and contradictory. At trial, appellant orally complained that the definitions contained "result of conduct" language, but in his proposed written instructions, appellant requested that only the "result of conduct" portions be submitted. In his appellate brief, appellant quotes his oral objections where he complained about the inclusion of the "result of conduct" portions, but he then argues that the offense here was a result-oriented one. Because appellant's trial objections and his appellate point present contradictory grounds, his contentions are not properly preserved for appellate review.

■ Assuming, however, that his contradictory complaints are preserved, we find no reversible error in the trial court's charge. Error occurs when the charge permits the jury, by applying the broad definitions, to convict a defendant of a "result-oriented" offense without finding that he intended the result of his conduct. *See Alvarado,* 704 S.W.2d at 38–40. Whether aggravated sexual assault is classified as a "result-oriented" offense, *see Saldivar,* 783 S.W.2d at 267, or a "nature of conduct" offense, *see Alvarado,* 704 S.W.2d at 39, the possibility that the jury improperly applied the statutory definitions does not exist in the present case, as it did in *Alvarado.* Here, the application portion of the charge required the jury to find that appellant intentionally or knowingly, by threatening to use force, caused his sexual organ to penetrate the victim's sexual organ. When the definitions are applied in context, the charge does not authorize the jury to convict appellant of the offense under a theory which is not authorized by the Penal Code. *See Kinnamon,* 791 S.W.2d at 89. The trial court did not err in charging the jury. Appellant's first point of error is overruled.

■ In his second point, appellant complains that the trial court erred when it allowed a nurse to testify about statements made to her by the victim at the hospital. Appellant concedes that Tex.R.Crim.Evid. 803[3] permits the admission of certain statements, but he contends that the nurse was collecting evidence for the prosection, not providing treatment, and therefore was not qualified under Rule 803 to testify about

---

the jury found appellant guilty of aggravated sexual assault, it had no reason to consider the assault paragraph, and error, if any, in the assault paragraph would not constitute reversible error. *See Smith v. State,* 744 S.W.2d 86, 95 (Tex.Crim.App.1987).

**2.** The Penal Code defines intent as follows:

"A person acts intentionally, or with intent, with respect to *the nature of his conduct or to a result of his conduct* when it is his conscious objective or desire to engage in the conduct *or cause the result.*" Tex.Pen.Code Ann. § 6.03(a) (Vernon 1974).

The Penal Code defines "knowledge" as follows:

"A person acts knowingly, or with knowledge, with respect to the nature of his conduct *or to circumstances surrounding his conduct* when he is aware of the nature of his conduct or that the circumstances exist. *A person acts*

*knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.*" Tex.Penal Code Ann. § 6.03(b) (Vernon 1974).

Appellant's oral request, if granted, would have deleted the underscored portions of the Penal Code definitions.

**3.** Tex.R.Crim.Evid. 803 provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(4) **Statements for purposes of medical diagnosis or treatment.** Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

the statements.[4] We disagree with appellant's contention. The nurse testified that she was an emergency room nurse. She checked the victim for bruises, collected bodily fluids, examined the vaginal canal, and asked various questions related to the victim's medical condition. She also collected samples for the "rape kit." Although the record shows that the nurse engaged in a dual role of collecting evidence and providing medical service, we find that the nurse performed sufficient functions to bring her within the scope of Rule 803. Appellant's second point of error is overruled.

In his third point, appellant contends that the trial court erred when it allowed Jose Luis to testify about statements the victim made to him about the incident. Luis testified that as he was preparing to start his job at the Wash–Em car wash, a woman came running in, crying, and asking for help. Luis described her as afraid. As Luis drove her to her aunt's house, she told Luis that she had gone to work at an apartment, that she had been threatened and abused, that the man hid her purse and shoes, and that she ran out of the apartment when the phone rang.

Appellant contends that the facts indicate that the victim was not in the grip of a startling event, but was capable of cool reflection when the statements were made. We disagree. Luis' testimony shows that the victim was crying, upset, and at times unable to speak. She had just escaped from the apartment where she had been held and assaulted.

■ No single principle governs the admissibility of evidence under the excited utterance or spontaneous declaration rule. On the contrary, in determining what acts or declarations are part of the res gestae, so as to be admissible under the rule, each case must be considered on its own. The paramount factor is whether the person who made the statement was still dominat-

ed at the time by emotions instigated by the happening of the principal act or event. *Fisk v. State,* 432 S.W.2d 912, 914–15 (Tex. Crim.App.1968); *Jones v. State,* 772 S.W.2d 551, 554–555 (Tex.App.—Dallas 1989, pet. ref'd). If the statements are made while the declarant is in the grip of emotion, excitement, fear, or pain, and they relate to the event, they are admissible even after an appreciable time has elapsed between the event and the making of the statement. *Jones,* 772 S.W.2d at 555. The evidence in the instant case supports a conclusion that the victim was still in the grip of emotion when she made the statements to Luis about the incident. The trial court did not err in allowing the statements into evidence. Appellant's third point of error is overruled.

■ In his fourth point, appellant contends that reversible error occurred when the trial court allowed the State to comment on appellant's failure to testify. At the punishment phase, the prosecutor argued:

Ladies and gentlemen, it's always very difficult for a prosecutor to come before you and say give him X number of years. There are so many things to consider. But what have you been shown? That wide range of punishment that we have talked about. Toward that lower end, what mitigating factors or factors that would lessen a possible punishment have been shown to you? None whatsoever.

The prosecutor's argument must be viewed from the jury's standpoint, and to be improper, the language must be of such character that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify. *Dickinson v. State,* 685 S.W.2d 320, 323 (Tex.Crim.App. 1984). The State may point out that a defendant has not presented any evidence. *Davis v. State,* 670 S.W.2d 255, 257 n. 1 (Tex.Crim.App.1984). The comment,

---

**4.** Appellant did not present this argument until his second objection to the nurse's testimony. Therefore, any testimony admitted before the second objection was not admitted over this objection. Before the second objection, the nurse testified that the victim told her she had

begun working as a housekeeper and was sexually assaulted during the night. After appellant's second objection, the nurse testified that the victim told her that "she was held from both arms" and that the bruises on her arms were from where "he was holding her in the bed."

viewed in the light of the applicable standard, was not improper. It directed the jury's attention to appellant's failure to produce evidence, not to his failure to testify. Appellant's fourth point of error is overruled.

■ In his fifth point, appellant contends that the trial court allowed the State during closing argument at the guilt phase to comment on extraneous offenses. The prosecutor stated:

If she (the victim) had been a sophisticated lady who has been here before and a friend of a friend and these things, it is possible and reasonable under the evidence that whoever this other person was may have heard her say that also, that I also worked for him before and perhaps nothing happened.

Appellant argues that the prosecutor improperly implied that appellant committed similar offenses. See Walker v. State, 664 S.W.2d 338, 339–41 (Tex.Crim.App.1984). We disagree with appellant's contention, although we admittedly are unable to determine the focus of the prosecutor's argument. We do note, however, that during trial, evidence was admitted which referred to appellant hiring maids who would only stay with him a few days. Other testimony referred to noises similar to that heard on the night of the offense previously coming from appellant's apartment. Other evidence showed that the victim learned of the job at appellant's apartment through a friend of a friend. The record did not establish any relationship between these various pieces of evidence. We cannot find that the prosecutor's above statement improperly implied that appellant had committed extraneous offenses. Appellant's fifth point is overruled.

■ In his sixth point, appellant contends that the trial court allowed the prosecutor to argue facts outside the record. During trial, one of appellant's neighbors testified that she went to appellant's apartment on the night of the offense because of the noise. According to her, she heard loud voices, like fighting, arguments, and screaming. Another neighbor, Eleazar Perez–Salinas, testified that he heard noises like a young girl crying or somebody being hurt. He did not do anything because he had heard noises like this coming from appellant's apartment before. The following morning, appellant asked Perez–Salinas if he had heard any noises during the night. Perez–Salinas told appellant he had not, although he actually had. In argument, the prosecutor stated:

He (appellant's counsel) told you that there is evidence that they (appellant and the victim) were going to be married and there is evidence that they had some kind of an agreement. Where did that evidence come from? He told you there was evidence of an agreement and consent. That evidence came from Mr. Perez, if you will recall, who, when the defendant asked him, "Hey, did you hear the screaming last night"—

At this point, appellant objected that the prosecutor was misstating the record. The trial court overruled the objection, reminded the jury that they had heard the evidence, and instructed the prosecutor to proceed. He then continued:

Mr. Perez told you that he saw the defendant that morning, and that it happened. The defendant asked him about the screaming, and he told the defendant that he did not hear anything. You will recall that. He told you that he heard the screaming and that he woke up, and it sounded like the cries of a woman. He told you that.

But when he was asked by the defendant, he told you that he denied it to him, but that the defendant told him, "Yeah, I am going to marry her. I have got a girl, and I am going to marry her."

Why would he do that except to explain the screamings that were heard, except to explain the noise that was heard?

The prosecutor's argument technically misstates what appellant asked Perez–Salinas. Appellant asked Perez–Salinas if he had heard the noise, not if he had heard the screaming. We do not find, however, that this summarization constituted error. It was uncontroverted that some noise came from appellant's apartment. One neighbor

described it as argument or screaming. Perez–Salinas described it as crying or someone being hurt. The prosecutor, while technically misstating what appellant asked Perez–Salinas, was within the bounds of proper argument in characterizing the noise as another witness had. Appellant's sixth point of error is overruled.

The judgment of the trial court is affirmed.