**Ferrell SCOTT, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–92–00361–CR.**

Court of Appeals of Texas,
Tyler.

Dec. 28, 1994.

Discretionary Review Refused
March 1, 1995.

Weldon Holcomb, William Wright, Tyler, for appellant.

Edward J. Marty, Tyler, for appellee.

PER CURIAM.

A jury convicted Appellant of the offense of murder and assessed punishment at life imprisonment. Appellant raises one point of error on appeal. We will affirm.

By his sole point of error, Appellant alleges that the trial court erred in admitting, as a dying declaration, the victim Bobby McDonald's statement identifying Appellant as the person who shot him. Under Tex. R.Crim.Evid. 804(b)(2) (Vernon 1992), a dying declaration is admissible as an exception to the hearsay rule. Rule 804(b)(2) provides:

(b) **Hearsay exceptions.** The following are not excluded if the declarant is unavailable as a witness:

(2) *Dying declarations.* A statement made by a declarant while believing that his death was imminent, concern-

ing the cause or circumstances of what he believed to be his impending death.

Before a statement is admissible as a dying declaration, it must meet three requirements: "(1) the declarant must be unavailable; (2) the declarant, at the time he makes the statement, must believe his death is imminent; and (3) the statement must concern the cause or circumstances of the potential impending death." *Pritchett v. State,* 874 S.W.2d 168 (Tex.App.—Houston [14th Dist.] 1994, no pet.), *citing,* TEX.R.CRIM.EVID. 804(b)(2), and *Williams v. State,* 800 S.W.2d 364, 368 (Tex.App.—Fort Worth 1990, pet. ref'd, 805 S.W.2d 474 (Tex.Cr.App.1991)). In reviewing the evidence to determine whether the State met its burden of proof in establishing this exception to the hearsay rule, we will apply the abuse of discretion standard of review. *See Montgomery v. State,* 810 S.W.2d 372 (Tex.Cr.App.1991); *Rushing v. State,* 813 S.W.2d 646, 650 (Tex.App.—Houston [14 Dist.] 1991, pet. ref'd).

Here, the record from the hearing on the motion to suppress McDonald's statement shows that on or about January 25, 1991, Tyler Police Officer Randy Reed responded to a reported shooting. Upon arrival at the scene, Reed found Bobby McDonald lying on the driveway with bullet wounds in each leg and an abrasion on his head. Reed administered first aid and asked McDonald what had happened. McDonald did not answer but rolled about on the ground and repeatedly said that he could not breathe.

An ambulance then arrived. Eric Switzer, the lead paramedic for East Texas Medical Center's EMS department, testified that when he arrived at the scene, McDonald had a bullet hole in each thigh, another possible exit wound, and several lacerations on the head. He further testified that McDonald was thrashing around and appeared to have lost a large amount of blood. McDonald complained to Switzer that he was short of breath and his lower back and belly hurt. Switzer testified that McDonald was "very shocky or hypovolemic", and that he was in critical condition. Thus, they treated him, then quickly transported him to the hospital. Switzer stated that McDonald was in critical condition, and in his opinion, McDonald was suffering from a life threatening injury.

After the ambulance took McDonald away, Reed secured the scene and then followed McDonald to the hospital. About fifteen minutes after leaving the crime scene, Reed was allowed to question McDonald, who was in the trauma room. In response to Reed's questions of "what happened?", McDonald repeatedly stated "I can't breathe, I can't breathe." According to Officer Reed, McDonald was in a lot of pain, but Reed kept repeating the question. At one point, McDonald told Reed that he would tell him what happened later. Reed left the trauma room and spoke with Dr. Hackney, the emergency room physician. Dr. Hackney told Officer Reed that Mr. McDonald had possibly been shot in the head, and that his prognosis was uncertain. After talking with Hackney, Reed returned to McDonald's bedside to question him. McDonald continued to complain about his breathing in response to Reed's questions about what had happened. Finally, Officer Reed said to McDonald: "If you die do you want the person who did this to you to go free?" According to Reed, McDonald then fell silent for 30 to 60 seconds, and Reed stated that "you could see that he was thinking this over." Then, in response to Reed's question, McDonald stated that Ferrell Scott had shot him. After answering that question, McDonald then answered several other questions like "where he lived, things to this nature." McDonald also told Reed that he had been robbed when he was coming from his house across the street, and that Appellant had been hiding behind a bush. According to McDonald, Appellant had a blue steel handgun, and he had asked McDonald for his wallet. He then shot McDonald in front of his house. In total, McDonald stated that four or five shots were fired.

After the two men had talked for an estimated five to ten minutes, Reed stated that McDonald told him that "he would talk to me later" and then that was it. According to Reed, McDonald never made any statement that he knew he was dying or that his death was imminent. McDonald died about four days later of complications resulting from gunshot wounds. McDonald's statements

were the only evidence connecting Appellant to the shooting.

At the conclusion of the suppression hearing, the trial court overruled Appellant's motion to suppress McDonald's statements to Reed. Thereafter, at trial, the witnesses testified to essentially the same facts. Additionally, Switzer testified that McDonald's classification as "critical" was the most grave classification an EMS paramedic could give a patient. Also, Dr. Duane Andrews, the surgeon who was on call, testified that in addition to having suffered a significant loss of blood, McDonald was hypothermic from exposure to cold, had been struck in the head from behind, and had been shot in each leg below the buttocks.

■■■ Appellant argues that the above evidence fails to satisfy the requirement that the victim's statement was made in contemplation of death. Contemplation of death may be inferred from surrounding circumstances; it is not necessary that the declarant specifically express his awareness of impending death. *Thomas v. State*, 699 S.W.2d 845, 853 (Tex.Cr.App.1985); *Hayes v. State*, 740 S.W.2d 887, 889 (Tex.App.—Dallas 1987, no pet.). Circumstances to be considered in evaluating a potential dying declaration include: (1) the express language of the declarant; (2) the nature of the injury; (3) any medical opinion provided to the declarant, and (4) the conduct of declarant. *Thomas.* Additionally, the fact that the statement was made in response to a question does not render it inadmissible.[1] *Hayes*, at 889.

■■■ Here, we hold that the circumstances surrounding McDonald's statement were sufficient to warrant an inference that McDonald believed his death was impending. McDonald had been hit in the head, shot twice, had lost a large quantity of blood, was struggling for breath, was in severe pain in his legs and abdomen, and was suffering from hypothermia. Moreover, the fact that McDonald gave his first responsive answer in reply to Officer Reed's question: "If you die

do you want the person who did this to you to go free?", further manifests his awareness of impending death.

Under these circumstances, McDonald's additional statement that "I'll talk to you later" is not necessarily evidence that Appellant did not believe his death was imminent. Although under prior law [2] it was required that the declarant believe there was no hope of recovery, that requirement has been eliminated from Rule 804(b)(2). *See Burks v. State*, 876 S.W.2d 877, 901 (Tex.Cr.App.1994). For these reasons, we conclude that the trial court did not abuse its discretion in admitting the statement as a dying declaration. Appellant's sole point of error is overruled, and the judgment of the trial court is **affirmed.**

---

1. This principle is not necessarily applicable where the declarant merely responds to leading questions.

2. Former article 38.20 of the Texas Code of Criminal Procedure repealed by Texas Rules of Criminal Evidence effective September 1, 1986 [Acts 1985, 69th Leg., ch. 685 § 9(b)].