In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00165-CR


______________________________




GERALD GLENN WILDER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


Fannin County, Texas


Trial Court No. 20294




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Carter


Concurring Opinion by Justice Ross



O P I N I O N



 Gerald Glenn Wilder was found guilty by a jury of the offense of aggravated sexual assault
of his daughter, T.N.W. The court assessed punishment at sixty years' confinement.

 T.N.W., a nine-year-old child, testified that her father sexually assaulted her while her family
was living with friends. The Fannin County Child Protective Service (CPS) was notified concerning
the sexual abuse of this child. CPS ultimately took custody of the child,where she remained through
the time of the trial.

 A nurse, Carolyn Ridling, examined the child following the report of the sexual assault. The
nurse testified as to statements the child made to her regarding the sexual assault by her father.

 Debra Lynn Pruitt, a licensed professional counselor, counseled the child once a week for
about eight months. The counselor testified as to the child's statements of sexual assault by her
father. 

 Vernon Dowdy had previously been convicted of aggravated sexual assault of a child in
Fannin County and received a sentence of thirty-five years' confinement. He testified that he was
in the Fannin County jail with Wilder and others when a plan was formulated for an escape. He
further testified that Wilder filed a piece of metal into a knife and cut into the sheet rock around the
vent. They were prevented from escaping due to a bar in the vent. Dowdy stated that Wilder told
Dowdy he was going to find the witnesses against him and kill them. He further stated that he
understood his testimony subjected him to further punishment. Dowdy stated that there were "no
strings attached" to his testimony and that no one had discussed with him writing a letter to the
parole board to help him out. 

Issues

 1. Was error committed when the State explained the concept of "beyond a reasonable
doubt" to the venire?

 2. Did the court err in excusing venireman Roundtree? (1)

 3. Was it error to admit evidence of statements made by the child to the sexual assault
nurse examiner and/or to the child's counselor?

 4. Did the court err in refusing to instruct the jury that witness Dowdy had committed
perjury?

Issue No. 1 - Was error committed when the State explained the concept of

"beyond a reasonable doubt" to the venire?


 In explaining the State's burden of proof to the venire during voir dire, the prosecutor began
by explaining that the State had the burden of proof beyond a reasonable doubt--not beyond a
shadow of a doubt. He then described the elements of this particular offense, sexual assault of a
child, and stated, "we have to prove them beyond a reasonable doubt." Further, the State advised,
"[W]e don't have a definition [of reasonable doubt] any more and it's kind of up to you. We know
it doesn't mean we have to prove it a hundred percent." After an objection was made and overruled,
the State prosecutor stated that you cannot prove it 100 percent because "you weren't there" and that
"[j]uries somehow come up with it every day in this country. You determine reasonable doubt based
on the evidence."

 Wilder argues that such statements violate Paulson v. State, 28 S.W.3d 570 (Tex. Crim. App.
2000) (holding that it is improper to define the phrase "beyond a reasonable doubt" to the jury absent
the agreement of parties). Wilder further argues that several courts of appeals have held that it is
error to instruct the jury that the prosecution is not required to prove guilt beyond all possible doubt. 
Rodriguez v. State, 96 S.W.3d 398, 400 (Tex. App.-Austin 2002, pet. ref'd); Phillips v. State, 72
S.W.3d 719 (Tex. App.-Waco 2002, no pet.). This Court has recently agreed with the Houston First
District that such instruction in the jury charge does not present error.  Fluellen v. State, 104 S.W.3d
152 (Tex. App.-Texarkana 2003, no pet.) (citing Carriere v. State, 84 S.W.3d 753, 759 (Tex.
App.-Houston [1st Dist.] 2002, no pet.)). In those cases, the jury was instructed, "[I]t is not required
that the prosecution prove guilt beyond all doubt. It is required that the prosecution's proof excludes
all reasonable doubt concerning the defendant's guilt." We agreed with the Houston First Court of
Appeals that "[t]he charge was proper because it did not define reasonable doubt--it merely
instructed the jury that appellant's guilt must be proved beyond a reasonable doubt, not beyond all
possible doubt." Fluellen, 104 S.W.3d at 164 (citing Carriere, 84 S.W.3d at 759)).

 Here, we do not have a court instruction to the jury, but a statement by the prosecutor given
in connection with explaining the concept of reasonable doubt. Clearly, it is proper to question
veniremen concerning their understanding of the term "reasonable doubt." Dinkins v. State, 894
S.W.2d 330, 344-45 (Tex. Crim. App. 1995); Lane v. State, 828 S.W.2d 764, 766 (Tex. Crim. App.
1992); Woolridge v. State, 827 S.W.2d 900, 906 (Tex. Crim. App. 1992). A venireman is subject
to a challenge for cause by the State, or by a defendant, if he or she is unable to follow the law. Tex.
Code Crim. Proc. Ann. art. 35.16(b)(3), (c)(2) (Vernon Supp 2003).

 Generally, "[e]rror in argument (2) does not lie in going beyond the court's charge, but lies in
stating law contrary to the same." Singleton v. State, 479 S.W.2d 672, 674 (Tex. Crim. App. 1972)
(citing Daywood v. State, 157 Tex. Crim. 266, 248 S.W.2d 479 (1952)). For instance, in Rogers v.
State, 795 S.W.2d 300, 306 (Tex. App.-Houston [1st Dist.] 1990, pet. ref'd), during voir dire
examination, the trial court explained to the jury, "[T]he bottom line is going to be what beyond a
reasonable doubt is to you. I can assure you not like they say on TV, beyond all shadow of a doubt
or beyond all doubt . . . ." The prosecutor followed by stating concerning reasonable doubt, "We
know it is not beyond all doubt. It is not beyond a shadow of a doubt." Id. The court found no error
in such statements. In Alvarado v. State, 821 S.W.2d 369, 374 (Tex. App.-Corpus Christi 1991, no
pet.), the prosecutor stated concerning the burden of proof, "That's what it's about, not beyond a
shadow of a doubt, not a hundred percent proof." While this argument was not objected to, the court
found such statement was not manifestly improper, did not violate a mandatory statute, and did not
inject new facts harmful to appellant and affirmed the conviction.

 The charge in this case, which was not objected to, stated, "It is not required that the
prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes
all 'reasonable doubt' concerning the defendant's guilt." 

 While we do not encourage the use of a percentage equation in describing the concept of
beyond a reasonable doubt, it appears that the prosecutor's statement was an attempt to explain and
illustrate in layman's terms the meaning of reasonable doubt. We do not believe it is contrary to the
proper jury charge, which explained that the prosecution was not required to prove guilt beyond "all
possible doubt."

 We hold that such statement by the prosecutor was not contrary to the jury charge and was
not error.Issue No. 2 - Did the court err in excusing venireman Roundtree?

 In his second point of appeal, Wilder argues that the trial court erred in excusing venireman
Roundtree. This venireman was excused after the State had finished its voir dire examination and
prior to the defense examining the venire. The court excused Roundtree, and after an objection,
stated, "I excused him after he said that he could not be fair after he mentioned that twice." The
record does not clearly show when Roundtree stated he could not be fair. During the course of the
State's presentation at voir dire, several jurors were asked if they could be fair or if they had a
problem serving on a case of this nature. For the most part, the record identifies the speakers only
as "juror." Examples are from questions and answers during the State's voir dire: 

 [The State]: Anything about that that causes you a problem in assault cases. 


 JUROR: Yes. 


 . . . .


 [The State]: Anything about that that causes you a problem in this case? 


 JUROR: Yes. 


 . . . .


 [The State]: . . . . Anybody on this side of the room think they couldn't be a
fair juror in a sexual assault of a child case . . . ?


 JUROR: I couldn't. I mentioned it. 


 . . . .


 JUROR: I have something I would like to discuss but I would like to discuss
it in private. 


 [The State]: Absolutely. Anybody else feels that way? 


 JUROR: Yes. 


 [The State]: Yes, sir?


 JUROR: Same problem. 


 THE COURT: Anybody else that's like that, stay in here or come back in
here and we will talk to you. 


 Immediately after this exchange, the court began hearing individual juror's explanations and
concerns about being able to serve on this particular case. After hearing from several jurors, the
following occurred:

 THE COURT: Thank you. You are Mr. Roundtree, number 5?

 JUROR: Yes, sir.

 THE COURT: You don't have to remain. I'm going to excuse you. 

 Further, the trial court explained its action in excusing Roundtree:


 THE COURT: I did. I excused him after he said that he could not be fair
after he mentioned that twice.


 The record does not clearly show what Roundtree said, but the record does show that several
jurors indicated that for various reasons, they did not feel they could serve fairly on the jury. The
court told those jurors to remain and discuss that with him, and he ruled on each one of them. 
During the course of this, venireman Roundtree was excused. 

 It would certainly be preferable, and we urge the trial courts to have each juror specifically
identify himself or herself during the voir dire process. The trial court retains broad discretion to
excuse prospective jurors for good reason. Wright v. State, 28 S.W.3d 526, 533 (Tex. Crim. App.
2000). This authority continues even after an individual juror has been sworn and exists until the
entire jury is impaneled and sworn. Fuentes v. State, 991 S.W.2d 267, 277-78 (Tex. Crim. App.
1999). "Accordingly, before the entire jury has been impaneled and sworn, the trial court may
excuse a juror with or without the consent of the parties." Wright, 28 S.W.3d at 533. In Wright, the
trial court excused a juror who called the court and informed it that her mother had died. Id. No
hearing was conducted and the Texas Court of Criminal Appeals held that excusing the juror was
not an abuse of discretion. We hold that the trial court's action of excusing Roundtree was not an
abuse of discretion.

 Further, to show error, Wilder must show that the trial court's action not only was improper,
but that the error caused harm that justifies a reversal. Bell v. State, 724 S.W.2d 780, 795 (Tex.
Crim. App. 1986). The erroneous excusing of a veniremember will call for reversal only if the
record shows the error deprived the defendant of a lawfully constituted jury.  It is not constitutional
error unless it involves issues of race, sex, or ethnicity, which has not been shown here. Jones v.
State, 982 S.W.2d 386, 391 (Tex. Crim. App. 1998).

 Wilder has not demonstrated that venireman Roundtree caused him to have objectionable
jurors or explained why the jury selected was not lawfully constituted.  Tasby v. State, No. 11-02-00110-CR, 2003 Tex. App. LEXIS 4246 (Eastland May 15, 2003, no pet. h.). 

 Wilder's second point of appeal is overruled.

Issue No. 3 - Was it error to admit evidence of statements made by the child to the sexual
assault nurse examiner and/or to the child's counselor?


 Wilder complains that inadmissible testimony was received from Nurse Carolyn Ridling and
licensed professional counselor, Debra Lynn Pruitt. Ridling is a registered nurse and the director of
the sexual assault nurse examiner's program. She examined T.N.W. and took a history from her to
determine trauma for diagnosis purposes. She was allowed to testify to the jury that the child told
her in graphic terms how her father sexually assaulted her.

 The question is whether the trial court abused its discretion in admitting this testimony. As
long as the trial court's ruling is within the zone of reasonable disagreement, the appellate court will
not reverse the ruling. Montgomery v. State, 810 S.W.2d 372, 391-92 (Tex. Crim. App. 1990) (op.
on reh'g).

 Rule 803(4) of the Texas Rules of Evidence provides an exception to the hearsay rule for
"[s]tatements made for purposes of medical diagnosis or treatment and describing medical history
. . . ." Tex. R. Evid. 803(4); Mendoza v. State, 69 S.W.3d 628, 633 (Tex. App.-Corpus Christi 2002,
pet. ref'd); Beheler v. State, 3 S.W.3d 182, 188 (Tex. App.-Fort Worth 1999, pet. ref'd); Torres v.
State, 807 S.W.2d 884, 886-87 n.3 (Tex. App.-Corpus Christi 1991, pet. ref'd). Therefore, the
evidence meets a clear exception to the hearsay rule.

 Wilder challenges the evidence on the basis that it violates his right of confrontation under
the Sixth Amendment to the United States Constitution. He cites Lopez v. State, 18 S.W.3d 220
(Tex. Crim. App. 2000), for the proposition that the Confrontation Clause will prevail if there is a
conflict between it and the Texas Rules of Evidence. We do not believe there is a violation of the
Confrontation Clause in this instance.

 "[T]here is good reason to conclude that the Confrontation Clause is not violated by
admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and
subject to full and effective cross-examination." California v. Green, 399 U.S. 149, 158 (1970). In
this case, the child testified in open court under oath and subject to cross-examination. As the Green
case explains, testifying at trial ensures that the witness will be tested under oath, guarantees
submission to cross-examination, and permits the jury to observe the demeanor of the witness.

 It is also clear that all out-of-court statements are not prohibited by the Confrontation Clause. 
Idaho v. Wright, 497 U.S. 805, 813-14 (1990). If the statement falls within a firmly-rooted hearsay
exception, then reliability can be inferred without more. There is no doubt the exception for
statements made for purposes of medical diagnosis or treatment is a firmly-rooted hearsay exception. 
White v. Illinois, 502 U.S. 346, 356 n.8 (1992). The testimony of Ridling was properly admitted.

 Debra Pruitt is a licensed professional counselor with a master's degree. She was requested
to see the child for counseling once a week for about eight months. The child was referred to Pruitt
for behavioral problems observed by the foster mother. Pruitt diagnosed the child with anxiety,
adjustment disorder, and depression with anxiety. The bases of the child's anxiety was what she had
been through, the potential sexual abuse, removal from her home, and the trauma received in her
home environment. The child was evaluated by Dr. Denowski, a psychologist, and Pruitt received
that report. The child has a knowledge of sexual activity beyond what a nine-year-old should know.

 On cross-examination, Pruitt was further questioned about what the child said to her, and she
repeated that the child said she did "it" with her daddy and "it" meant sex. The child told her about
four times during their sessions that her father had sex with her. 

 Wilder argues that Pruitt's testimony relating statements made by T.N.W. are inadmissible
hearsay and violate his Sixth Amendment right of confrontation. As has been discussed, Rule 803(4)
of the Texas Rules of Evidence provides an exception to hearsay "a statement made for purposes of
medical diagnosis or treatment and describing medical history . . . ." Gohring v. State, 967 S.W.2d
459, 462 (Tex. App.-Beaumont 1998, no pet.). In Gohring, the Beaumont court held that a "drama
therapist" who was a "registered play therapist" working under the supervision of a licensed
psychologist could testify to statements made to her of sexual abuse, because the victim was a high
school student and it was reasonable to infer that the victim understood she was seeing the therapist
for purposes of medical treatment in connection with the abuse. Id. at 461. Other courts that have
admitted similar testimony are Puderbaugh v. State, 31 S.W.3d 683, 685 (Tex. App.-Beaumont
2000, pet. ref'd) (allowing clinical social worker to testify under Rule 803(4)); Moyer v. State, 948
S.W.2d 525, 527-28 (Tex. App.-Fort Worth 1997, pet. ref'd) (statements made by patient to
paramedic were admissible under Rule 803(4)); Torres v. State, 807 S.W.2d 884, 886-87 (Tex.
App.-Corpus Christi 1991, pet. ref'd) (emergency room nurse could testify as to victim's statement
under Rule 803(4)). Wilder has cited Powell v. State, 88 S.W.3d 794 (Tex. App.-El Paso 2002, pet.
ref'd). The facts of Powell are similar with the major exception being that the counselor was
attempting to present evidence concerning statements made by a three-year-old child. The court
distinguished Gohring primarily by the age of the victim (a high school student versus three-year-old
child) explaining that the high school student would have understood she was seeing the counselor
for the purpose of medical treatment in connection with the abuse and that her statements were made
for the purpose of medical diagnosis or treatment, as opposed to a three-year-old child who had only
been seen one time after the incident. Powell, 88 S.W.3d at 798. The court held that such hearsay
statements of the three-year-old were inadmissible where there was no evidence the child understood
that he was seeing the counselor for the purpose of medical treatment and that his statements were
made for purposes of treatment of his trauma.

 In this case, the statements were made by a nine-year-old child. The counselor explained in
some detail that the child had been sent to her because of behavioral problems, that she counseled
her approximately once a week for about eight months, that she diagnosed the child with anxiety,
adjustment disorder, and depression. She further stated that such anxiety resulted from potential
sexual abuse and removal from her home and trauma received in her home environment. In view
of the foregoing facts, we find that it is reasonable to infer that T.N.W. understood that she was
receiving therapy for purposes of medical treatment in connection with the abuse and that her
statements to Pruitt were made for purposes of medical diagnosis and treatment. Further, the age
of this victim distinguishes this case from the facts in Powell. We find that the trial court did not
abuse its discretion in admitting this testimony into evidence. Further, based on the same rationale
as previously discussed concerning the testimony of Ridling, we find that admission of such
testimony does not violate Wilder's right of confrontation under the Sixth Amendment of the United
States Constitution.



Issue No. 4 - Did the court err in refusing to instruct the jury that witness Dowdy had
committed perjury?


 Wilder further urges that the trial court erred in failing to instruct the jury that witness Dowdy
lied in his testimony before the jury.

 Dowdy testified as to conversations he heard and actions he undertook while he and Wilder
were confined in the Fannin County jail. During a recess, the trial court apparently advised Dowdy
that he should attempt to get a letter from the district attorney or the sheriff that might ultimately
benefit him for parole purposes. After counsel for Wilder overheard such comments, he asked
Dowdy in the presence of the jury if anyone told him anything about writing a letter to the parole
board on his behalf, to which Dowdy answered, "No." Thereafter, counsel for Wilder moved the trial
court to instruct the jury that Dowdy's answer to such question was untruthful and could possibly
constitute aggravated perjury under Tex. Pen. Code Ann. § 37.03 (Vernon 2003). The court denied
the request.

 Wilder cites Harrison v. State, 686 S.W.2d 220 (Tex. App.-Houston [1st Dist.] 1984, pet.
ref'd), for the proposition that the need to expose perjury or erroneous testimony for impeachment
purposes is recognized as a right of constitutional dimension. 

 In Harrison, the defense attempted to impeach the complainant's testimony concerning the
complainant's asking a bartender for a controlled substance. The trial court sustained the State's
objection to that cross-examination. The court held that such impeachment testimony should have
been admitted in order to expose before the jury alleged perjured or erroneous testimony. Id. at 226. 
 Wilder also cites Walder v. United States, 347 U.S. 62 (1954). In Walder, a defendant who
had a previous charge of drug possession that had been dismissed, was later tried for additional drug
charges. On cross-examination, he denied that he had ever purchased, sold, or possessed any
narcotics. The State then presented evidence from officers who participated in the previous search
and the chemists who analyzed the heroin. The United States Supreme Court held such evidence
was proper impeachment.

 Harris v. New York, 401 U.S. 222 (1971), also involves a case in which a defendant testified
and was impeached by the State with evidence that would otherwise be inadmissible. The court
found that, even though the evidence would not have been admissible in the case-in-chief, it was
proper to allow impeachment and that no defendant has the privilege to commit perjury.

 Each of the cases cited by Wilder involve possible impeachment by questioning the defendant
or a complainant. However, in this case, Wilder did not attempt to impeach Dowdy through the use
of the testimony or further cross-examination of Dowdy. Wilder instead requested that the trial court
instruct the jury that Dowdy had committed perjury or had lied to the jury.

 It is improper for the judge to comment on the weight of the evidence. Tex. Code Crim.
Proc. Ann. art. 36.14 (Vernon Supp. 2003), art. 38.05 (Vernon 1979). This prohibition against
judicial comment forbids any discussion by the trial court in the jury's presence of evidence adduced
at trial which might suggest to the jury the court's personal estimation of the strength or credibility
of such evidence or which might tend to emphasize such evidence by repetition or recapitulation. 
Atkinson v. State, 923 S.W.2d 21, 24 (Tex. Crim. App. 1996); Hathorn v. State, 848 S.W.2d 101,
114 (Tex. Crim. App. 1992). 

 In this case, Wilder had the right to impeach Dowdy's testimony by further cross-examination, or by evidence from the witnesses who overheard such comments. However, the trial
court is prohibited from expressing any opinion as to the weight of the evidence or discussing the
facts. Tex. Code Crim. Proc. Ann. art. 36.14. A jury instruction from the court that a witness lied
or committed perjury would violate the prohibition against judicial comment and would express the
trial judge's personal estimation of the credibility of evidence. Atkinson, 923 S.W.2d at 24.

 We hold that the trial court did not err in refusing to instruct the jury that witness Dowdy
committed perjury or lied in their presence.

 The judgment of the trial court is affirmed.




 Jack Carter

 Justice




CONCURRING OPINION

 I agree that the trial court did not err in overruling Wilder's objection to the prosecutor's
comments during voir dire concerning the State's burden of proof. As pointed out by the majority,
it is proper in a criminal case for the attorneys to question members of the jury panel concerning their
understanding of the term "reasonable doubt." The rules governing what attorneys may say during
voir dire, however, are different from those governing what the trial court may say in its charge to
the jury. The majority reasoned that the prosecutor's statements were proper because the court's
charge to the jury stated, "[I]t is not required that the prosecution prove guilt beyond all possible
doubt. It is required that the prosecution's proof excludes all reasonable doubt concerning the
defendant's guilt." I disagree with this part of the majority's analysis for the reasons stated in my
concurring opinion in Fluellen. Fluellen v. State, 104 S.W.3d 152 (Tex. App.-Texarkana 2003, no
pet.). The majority in the instant case cautions the prosecutor against quantifying the concept of
beyond a reasonable doubt during voir dire, but apparently feels it is permissible for the trial court
to do so in its charge to the jury. I respectfully disagree.




 Donald R. Ross

 Justice

Date Submitted: June 25, 2003

Date Decided: June 26, 2003


Publish

 


1. The record does not reveal Mr. Roundtree's first name.
2. Statements by the prosecution, whether in final argument or voir dire examination, are
governed by the same rules. See Akin v. State, 981 S.W.2d 297 (Tex. App.-Texarkana 1998, no
pet.); Varughese v. State, 892 S.W.2d 186 (Tex. App.-Fort Worth 1994, pet. ref'd).