In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00137-CV


______________________________




JAMES ALCORN AND TODD ALLEN, Appellants



V.



WASHINGTON MUTUAL BANK, F.A., Appellee




 


On Appeal from the 62nd Judicial District Court


Franklin County, Texas


Trial Court No. 9414




 




Before Morriss, C.J., Ross and Cornelius,* JJ.


Opinion by Justice Cornelius


*William J. Cornelius, C.J., Retired, Sitting by Assignment



O P I N I O N



 James Alcorn and Todd Allen appeal an adverse summary judgment rendered by
the trial court against them in their suit against Washington Mutual Bank, F.A. Alcorn and
Allen sued the bank for debt, breach of contract, and violation of truth-in-lending laws. The
bank answered with a general denial and a counterclaim seeking recovery on a promissory
note and foreclosure of a lien on a house owned by Alcorn and Allen.

 These are the facts giving rise to the litigation: Alcorn and Allen decided to take out
a home equity loan to obtain money for certain expenditures, including some repairs on
their house. They negotiated the loan with Long Beach Mortgage Company. They
executed a Texas Home Equity Note (1) which provides that they borrowed $80,000.00 from
Long Beach Mortgage Company and promised to repay the loan in certain installments
with interest. On the same day, both Alcorn and Allen signed a security agreement
granting Long Beach Mortgage Company a security interest in their house to secure the
note for the $80,000.00 loan. Alcorn and Allen received the amount of the loan, less
certain loan expenses, in the form of a check. They cashed the check and received the
proceeds.

 Alcorn and Allen paid the note installments for some time, but eventually stopped
making the payments because they came to believe that, legally, the home equity note did
not represent a loan from Long Beach Mortgage Company to them, but instead
represented money that was "created" for their own account by their signatures, so the
money represented by the note was theirs from the beginning and Long Beach Mortgage
Company owed the money to them instead of their owing it to the mortgage company.

 When Alcorn and Allen stopped paying the note installments, the bank, which had
acquired the note and security interest, accelerated the note payments and took steps to
foreclose its lien on the house. Alcorn and Allen then brought suit against the bank,
contending that the bank owed them the $80,000.00 plus interest rather than their owing
the bank, as the note and security agreement provide. The bank counterclaimed, seeking
to recover the amount due on the note and to foreclose its lien on the house.

 Alcorn and Allen filed a motion for summary judgment. The bank responded, and
then filed its own motion for summary judgment, supported by affidavits, copies of material
documents, and excerpts from deposition testimony by Alcorn and Allen. Alcorn and Allen
responded to the bank's motion for summary judgment. They had attached some affidavits
to their own motion for summary judgment, and they refiled them with their response to the
bank's motion for summary judgment. Ultimately, the trial court granted the bank's motion
for summary judgment and denied Alcorn and Allen's motion for summary judgment. The
judgment granted the bank a recovery on the note and a foreclosure of its security interest
in the home.

 Alcorn and Allen have appealed. They raise several points in their brief, which we
have grouped for discussion because they raise generally only two contentions: (1) the
bank failed to respond to certain discovery requests and a subpoena duces tecum, thus
effectively preventing Alcorn and Allen from going to trial before a jury, and (2) although
they do not specifically raise this contention in their points, we deem, in the interest of
justice, that they contend the trial court erred in granting the bank's motion for summary
judgment. We overrule all these contentions and affirm the judgment.

 The items that Alcorn and Allen allege were not produced in discovery are
completely irrelevant to any material issue in this case, because all of those items are
relevant only to Alcorn and Allen's patently unmeritorious legal theory that fails to state any
claim to relief under the facts of this case. Alcorn and Allen take the position that, when
they executed and delivered the home equity note to Long Beach Mortgage Company, the
note did not evidence a debt from them to the mortgage company, but instead "created"
money belonging to them that they do not owe to anyone. This is a legally erroneous
concept that is apparently based on Alcorn and Allen's misinterpretation of some
information they discovered in a publication issued by the Federal Reserve System.

 When a person executes a promissory note, the note constitutes a written promise
by the maker to pay the amount specified in the note to the payee named in the note. Tex.
Bus. & Com. Code Ann. § 3.104(a), (b) (Vernon 2002); Wexel v. Cameron, Grier & Co., 31
Tex. 614, 617 (1869); Texmarc Conveyor Co. v. Arts, 857 S.W.2d 743 (Tex. App.-Houston
[14th Dist.] 1993, writ denied); Mauricio v. Mendez, 723 S.W.2d 296, 298 (Tex. App.-San
Antonio 1987, no writ); see also Tex. Bus. & Com. Code Ann. § 26.02(a)(2) (Vernon 2002). 
Indeed, Alcorn and Allen specifically acknowledged in writing in the note they executed
that, "This is an extension of credit . . . . In return for a loan that I have received, I promise
to pay U.S. $80,000.00 . . . to the order of the Lender." Furthermore, they acknowledged
in the security agreement they executed that, "Borrower owes Lender the principal sum of
EIGHTY THOUSAND and NO/100-Dollars ($80,000.00). This debt is an extension of
credit . . . and is evidenced by Borrower's note dated the same date as this Security
Instrument . . . ."

 The trial court did not abuse its discretion in refusing to require the bank to produce
the alleged missing discovery items identified by Alcorn and Allen because the bank
provided its complete loan file to Alcorn and Allen containing all the documents that were
relevant to this case. The requested "missing" items were irrelevant because they relate
only to a completely spurious and legally incorrect claim.

 Alcorn and Allen contend that the trial court erroneously refused to compel the bank
to produce a "credible witness" for deposition and enforce a subpoena duces tecum for
certain discovery items. We point out that the bank produced the witness requested, who
gave a deposition. The determination of whether a witness is credible is for the fact-finder,
not the party taking or opposing the deposition. Moreover, as noted above, the items
allegedly missing from the subpoena duces tecum were completely irrelevant to the
disposition of this case.

 The trial court correctly granted summary judgment to the bank because the
undisputed summary judgment evidence established the following facts:

 1. Alcorn and Allen borrowed $80,000.00 as a home equity loan from Long
Beach Mortgage Company and executed and delivered a home equity promissory note
evidencing the loan and a security agreement granting Long Beach Mortgage Company
a security interest in the real estate described in the security agreement.

 2. At the time of suit, Washington Mutual Bank, F.A., was the owner and holder
of the aforesaid note and security interest.

 3. The loan that is the subject of this suit was closed at Lakewood Land Titles,
Inc., by Ms. Patricia Fox, closing agent for Lakewood Land Titles, Inc.

 4. Alcorn and Allen received loan proceeds in the sum of $72,151.58, by check
#003489, from Lakewood Land Titles Bank, representing the $80,000.00 loan, less loan
costs. Long Beach Mortgage Company furnished the funds for check #003489 by wire
transfer to Lakewood Land Titles Bank.

 5. Alcorn and Allen cashed check #003489 and received and appropriated to
their own use the funds represented by said check.

 6. The loan described above was in default. Alcorn and Allen received notice
of the default and failed to cure the default.

 7. The note payments were accelerated, and at the time of judgment there was
due the principal sum of $79,824.45 plus interest and accrued charges of $6,916.03, with
additional interest accruing from April 5, 2002, at $24.03 per day.

 8. The bank has expended $17,962.55 in attorney's fees which were reasonable
and necessary.

 Because Tex. Const. art. XVI, § 50(a)(6)(C) and the home equity note involved here
provide that the makers of the note shall have no personal liability on the note, but it shall
be enforced against the security only, we modify the summary judgment rendered by the
trial court to substitute the following paragraph 2 for that included in the original summary
judgment:

 "2. The amount outstanding and owing to Washington Mutual Bank, F.A., on the
promissory note in question is in the principal amount of $79,824.45 plus accrued interest
of $6,916.03 through May 3, 2002, together with per diem interest thereafter at the rate of
$24.03 per day until paid; provided that James Alcorn and Todd Allen have no personal
liability as to the amounts specified in this paragraph 2 and paragraphs 4, 5, and 6 of this
judgment, but as to which the Bank's lien on the real property hereafter described is valid,
existing, and enforceable."

 As noted earlier, Alcorn and Allen filed a response to the bank's motion for summary
judgment, but supported their response by only conclusory allegations of erroneous legal
theories rather than material fact issues.

 The trial court's denial of Alcorn and Allen's motion for summary judgment was
correct for the same reasons that Alcorn and Allen's response to the bank's motion for
summary judgment was ineffectual-the allegations supporting their motion did not present
material facts, but only conclusory statements and allegations of various erroneous legal
theories of recovery.

 The bank asks us to assess damages against Alcorn and Allen for filing a frivolous
appeal. Although we have the authority to do so under Tex. R. App. P. 45, we elect not to
do so in this case.

 For all these reasons, as modified, we affirm the summary judgment.


 William J. Cornelius*

 Justice


*Chief Justice, Retired, Sitting by Assignment


Date Submitted: January 27, 2003

Date Decided: July 3, 2003

1. Alcorn signed the note and is designated in the note as "Borrower." Long Beach
Mortgage Company is designated as "Lender." Allen did not sign the note, but he testified
in his deposition that he initialed the note with Alcorn's knowledge and consent, and that
he intended to be fully obligated on the note.


 has broad discretion in
determining whether the outcry statement is both reliable and admissible as an exception
to the hearsay rule. Davidson, 80 S.W.3d at 135. We may not disturb a trial court's ruling
on the admissibility of a child's outcry statement unless the record on appeal demonstrates
a clear abuse of discretion. Id. at 135–36.
          In this case, the victim testified at trial. She admitted making an outcry to her
mother. (Factor 1.) The victim demonstrated that she knew the difference between telling
the truth and telling a lie, and that it was important to tell only the truth when testifying in
court. (Factor 2.) Both the victim's and mother's testimony showed the victim was
sufficiently mature to be able to observe, recollect, and narrate the events that were the
subject of her outcry at the time the statement was made.


 (Factor 2.) We therefore
conclude both the first and second Buckley factors favor a finding that the outcry is reliable.
          Naranjo correctly points out there is no medical evidence to corroborate the victim's
account of being sexually assaulted. (Factor 3.) However, this factor carries little weight
given the several months that lapsed between the last alleged assault and the child's
outcry, especially in light of the medical expert's testimony that a lengthy delay in a child's
outcry often precludes finding medical evidence to corroborate a claim of sexual assault. 
           Naranjo further notes that the victim's outcry came as the result of continued
questioning from her mother. The relevant trial testimony was as follows:
[Prosecutor:]Okay. What, if anything, else did she [the victim] say?
 
[Mother:]Well, she didn't want to talk. I kept -- when I asked her,
"That's it, right?"
And she wouldn't say nothing, nothing at all. And I kept asking
her. I said, "[Victim], answer me."
And she wouldn't. She didn't want to answer me. She said,
"You're upsetting me."
And I told her, "Well, you're upsetting me because you are not
answering me."
 
[Prosecutor:]Was that unusual when you asked her the question? 
Was there anything about her that you observed that caused you some type
of concern?
 
[Mother:]The fact that she wouldn't answer me. [The victim] talks
a lot.
 
[Prosecutor:]Okay. And, so, you say that you asked her again. At
some point did she finally say that someone . . . had done something to her?
 
[Mother:]Yes.
 
[Prosecutor:]What did she say?
 
[Mother:]She said, "Adam [Naranjo] touched me."
 
. . . .
 
[Prosecutor:]And did you ask what the defendant had touched her
with?
 
[Mother:]No.
 
[Prosecutor:]Okay. Why not?
 
[Mother:]Because she was crying, and I didn't want to upset her
more.
 
[Prosecutor:]Okay. And at any time during this conversation, did you
try to suggest what she should say or try to steer her; or did you simply listen
to what she had to say?
 
[Mother:]I just listened.
 
          The mother's testimony clearly shows she was persistent in questioning her
daughter. That testimony, however, does not show the mother was prompting the
substance of the victim's outcry.


 Cf. Davidson, 80 S.W.3d at 139 (no evidence outcry not
made in victim's own terminology without manipulation or prompting by adult as to outcry's
substance). (Factor 4.) The circumstances surrounding the outcry also indicate the victim
was afraid to tell her mother because she feared retaliation from Naranjo.


 Cf. id. at 134,
139 (victim's shaky voice and reluctance to tell mother about abuse suggested victim
feared punishment if she made an outcry). (Factor 10.) Moreover, the mother's earlier
testimony about Naranjo's role as a stepparent and caretaker established Naranjo would
have had the opportunity to commit the offenses described in the outcry testimony. Cf. id.
(defendant-babysitter had opportunity to be alone with child). (Factor 11.) In fact, both the
victim and the mother said the offense occurred while the mother was at work and had left
the victim at home with Naranjo. Accordingly, the evidence regarding the fourth, tenth, and
eleventh Buckley factors support a finding that the statement was reliable.
          The evidence in this case also suggests the victim's later statements—to the
forensic interviewer, to the examining physician at the Children's Assessment Center, and
to the trial court during direct examination—were consistent with the initial outcry to her
mother, although the later statements were more specific and included more serious
allegations. (Factor 6.) And the child's outcry—that Naranjo touched the victim on her
breast and private area—was a clear and unambiguous allegation Naranjo had engaged
in inappropriate contact with the child. (Factor 5.) This evidence favors a finding of
reliability under the fifth and sixth Buckley factors.
          Naranjo also suggests the child had a motive to fabricate the out-of-court statement,
which would weigh against a finding of reliability under the ninth Buckley factor. Naranjo
contends that, when the mother continued to question the victim about whether the victim
was holding in a secret, the child, being aware a friend had recently made an outcry of
sexual abuse, may have fabricated the accusation against Naranjo because she thought
her mother wanted or expected to hear such an allegation. Naranjo's suggestion on this
point has some persuasive influence. However, it is not so persuasive that it overwhelms
the evidence under the other Buckley factors favoring a finding of reliability. We therefore
cannot say the trial court's finding of reliability was outside the zone of reasonable
disagreement or amounted to an abuse of discretion. There was sufficient indicia of
reliability regarding the time, the content, and the circumstances of the statement for the
trial court to admit the mother's testimony regarding the child's outcry. We overrule
Naranjo's first point of error.
Therapist's Testimony
          In his second point of error, Naranjo contends the trial court erred by admitting the
therapist's hearsay testimony about statements made to her by the victim. At trial, the
State offered the testimony of Shirley Milstead, a social worker licensed by the State as an
Advanced Clinical Practitioner who also holds a Master's degree in social work from the
University of Houston. Milstead saw the victim during ten therapy sessions. When the
State asked Milstead whether the victim had disclosed any information about having been
sexually abused, Naranjo objected to the testimony as hearsay. The State responded by
offering Milstead's testimony under the medical treatment exception to the hearsay rule. 
The trial court overruled Naranjo's objection, and Milstead proceeded to testify the victim
had disclosed being sexually abused by Naranjo. 
          We review a trial court's decision to admit evidence under an exception to the
hearsay rule for abuse of discretion. Scott v. State, 894 S.W.2d 810, 811 (Tex.
App.—Tyler 1994, pet. ref'd). The proponent of the evidence sought to be admitted has
the burden to show the evidence fits within the exception to the hearsay rule. Id.;
Fibreboard Corp. v. Pool, 813 S.W.2d 658, 676 (Tex. App.—Texarkana 1991, writ denied).
          Testimony regarding "[s]tatements made for the purposes of medical diagnosis or
treatment and describing medical history, or past or present symptoms, pain, or
sensations, or the inception or general character of the cause or external source thereof
insofar as reasonably pertinent to diagnosis or treatment" are not excluded by the hearsay
rule. Tex. R. Evid. 803(4). For a statement to be admissible under the medical diagnosis
or treatment exception, the declarant must make the statement both for purposes of
medical diagnosis or treatment and with the understanding that giving the statement is part
of the diagnostic, treatment, or therapy process. See Wilder v. State, 111 S.W.3d 249, 256
(Tex. App.—Texarkana 2003, pet. ref'd) (statements made to licensed professional
counselor made with understanding that victim was receiving therapy and made for
purposes of medical diagnosis and treatment); see also Fleming v. State, 819 S.W.2d 237,
247 (Tex. App.—Austin 1991, pet. ref'd) ("statement must be reasonably pertinent to
diagnosis or treatment"). The record on appeal must show the witness' qualifications
conform to Rule 803(4). Moore v. State, 82 S.W.3d 399, 404 (Tex. App.—Austin 2002,
pet. ref'd). "If a witness's testimony fails to meet Rule 803(4)'s criteria requiring that the
statements be made to medical personnel in the course of diagnosis and treatment, then
that testimony cannot overcome the hearsay rule." Id. 
          At trial (and now on appeal), the State cited Fleming for the proposition that a
psychotherapist's testimony falls under the exception to the hearsay rule for statements
made for the purpose of medical diagnosis and treatment. In Fleming, the state offered
the testimony of a mental health therapist. Fleming, 819 S.W.2d at 243–46. During the
therapist's testimony, the state asked, "Okay. I want to ask you now exactly what the little
girl told you, as to part of your diagnosis? What type of statements did she make to you?" 
Id. at 244 (emphasis added). The Austin Court of Appeals affirmed the trial court's
admission of the therapist's testimony, concluding the child's statements to the mental
health therapist "describing the abusive acts and identifying the abuse were reasonably
pertinent to medical diagnosis and treatment, and were properly admitted pursuant to Rule
803(4)." Id. at 247. The testimony was properly admitted, in part, because "unlike ordinary
medical problems, the treatment of child abuse includes removing the child from the
abusive setting. Thus, the identity of the abuser is pertinent to the medical treatment of the
child." Id.
          In Macias v. State, 776 S.W.2d 255, 259 (Tex. App.—San Antonio 1989, pet. ref'd),
the San Antonio court upheld a trial court's admission of a psychologist's report for several
reasons. First, the report was qualified as a business record. Id. Second, while the
appellant objected to the report, he failed to object to the psychologist's later testimony
concerning the same information. The court found the appellant's failure to object
rendered harmless any erroneous admission. Id. Finally, the court found that the
circumstances surrounding the making of the statements by the child supported the state's
contention the statements were made by the child to the psychologist for the purpose of
medical diagnosis and treatment. The court, therefore, found the psychologist's records
were admissible under Rule 803(4). Id.
          In Puderbaugh v. State, 31 S.W.3d 683, 685 (Tex. App.—Beaumont 2000, pet.
ref'd), the appellant objected to the testimony of Richard Brouwer, a clinical social worker,
who testified about the child victim's statement her father had sexually abused her. The
Puderbaugh court held
in the course of treatment in counseling C.P., it had been conveyed to C.P.
that the reason for seeing him [the social worker] was to help her with her
emotional problems. Brouwer and C.P. discussed the importance of telling
the truth to him, and C.P. understood the difference between telling the truth
and telling a lie. Thus, the State established both the medical care
component of Brouwer's sessions with C.P. and C.P.'s awareness of the
purpose of the treatment.
 
Id. The court of appeals then overruled the appellant's objection. Id.
          In Moore v. State, 82 S.W.3d 399, 403–05 (Tex. App.—Austin 2002, pet. ref'd), the
appellant argued that the testimony of Judy Cardinale (a licensed social worker who was
also an "advanced clinical practitioner") was inadmissible under the medical diagnosis and
treatment exception to the hearsay rule. The Austin Court of Appeals noted the state had
not elicited testimony to explain how a licensed psychotherapist differs from a psychologist
or a psychiatrist, and there was no testimony about the training required to earn a
psychotherapy license. Id. at 405. The witness admitted she did not possess any medical
degrees and could not prescribe medicine. Id. And there was also no evidence
"concerning the requirements for licensure and whether, as a social worker who had
provided medical diagnoses, Cardinale received special training, was answerable to a
board which governed licensed social workers, or had to meet any advanced continuing
education requirements." Id. The Moore court then held the state had failed to establish
Cardinale's qualifications as a member of a medical profession and found the trial court
erred by admitting the social worker's testimony. Id.
          In Jones v. State, 92 S.W.3d 619, 623–24 (Tex. App.—Austin 2002, no pet.), the
trial court admitted testimony from a licensed professional counselor about statements
made to her by the child victim. The statements were made during the course of twenty-two sessions between the time of trial and initial referral by Child Protective Services. Id.
at 622. The Austin Court of Appeals held "[t]he complainant's statements made during the
course of such counseling did not possess the guarantees of trustworthiness on which the
medical diagnosis or treatment exception is founded." Id. at 623–24. Even though the
trial court had erred by admitting the counselor's testimony, the Jones court held such error
was harmless in light of the appellant's own testimony in which he confessed to the
conduct described in the victim's various statements. Id. at 624.
          In Wilder, 111 S.W.3d at 257, this Court affirmed the trial court's admission of
testimony from a licensed professional counselor because the testimony fit within the
medical diagnosis and treatment exception to the hearsay rule. In Wilder, the evidence
showed the victim had been referred to the counselor for specific behavioral problems. Id. 
The counselor diagnosed the child with "anxiety, adjustment disorder, and depression." 
Id. In light of those facts, we found the child's statements about having been sexually
abused were made for purposes of medical diagnosis and treatment. Id. And in Perez v.
State, 113 S.W.3d 819, 830 (Tex. App.—Austin 2003, pet. ref'd), the trial court permitted
a counselor to testify about statements the victim had made regarding being sexually
abused. The counselor also testified she had made no diagnosis and, based on the
record, it was clear the treatment goals were, at least in part, decided by the patient
herself. On appeal, the appellate court held the trial court abused its discretion by
admitting the counselor's testimony. Yet because the subject matter of the hearsay
statements was properly proven elsewhere, principally during the child's trial testimony and
that of her therapist, the error was harmless. Id. at 831. 
          In this case, Milstead testified the victim was referred by her mother's insurance
company for therapy or counseling based on the recommendation of Child Protective
Services. Milstead, however, did not do any psychological testing of the victim, she did not
claim to have provided any medical diagnosis or treatment, nor did she provide testimony
about the requirements for licensure. Cf. Moore, 82 S.W.3d at 405. There is no evidence
the victim was referred to Milstead for specific, diagnosed behavioral or psychological
problems. But cf. Puderbaugh, 31 S.W.3d at 685 (state established medical care
component of counseling sessions with social worker); Macias, 776 S.W.2d at 259
(circumstances surrounding statements to psychologist made for purposes of medical
diagnosis and treatment).
          Instead, Milstead's testimony focused on her counseling and therapy sessions with
the victim. During the ninth session, the victim told Milstead that Naranjo had digitally
penetrated the victim's vagina. Milstead noted the victim "quickly wanted to change the
subject and didn't want to pursue that topic any further." The victim stopped seeing
Milstead after the tenth session. Milstead's testimony does not show the victim's statement
regarding digital penetration was necessary for medical diagnosis or treatment. Instead,
the statement was brought up unexpectedly by the victim, and there was no evidence it
was discussed further. In short, there is nothing about the context of the victim's statement
that suggests it possesses the guarantees of trustworthiness on which the medical
diagnosis or treatment exception is founded. Cf. Jones, 92 S.W.3d at 623–24. 
Accordingly, we find the trial court abused its discretion by admitting Milstead's testimony. 
We must next determine whether this error requires reversal. 
          The erroneous admission of hearsay evidence is nonconstitutional error. Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) (citing Tex. R. App. P. 44.2(b)). A
nonconstitutional error that does not affect the appellant's substantial rights must be
disregarded. Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had
a substantial and injurious effect or influence in determining the jury's verdict." Moore, 82
S.W.3d at 405. If, after reviewing the record as a whole, we have fair assurance that the
error did not influence the jury, or had but a slight effect, then we are not to reverse the trial
court's judgment. Id. In Moore, the Austin Court of Appeals found the erroneous
admission of a therapist's recounting of the child's accusations was harmless because
(1) both the defendant and the victim testified about the incident, and (2) the therapist's
testimony about the child's accusations amounted to a single sentence in the record. Id.
at 406. 
          In this case, Naranjo did not testify about the alleged incidents. However, there was
testimony from Sheila Lahoti, M.D., a pediatric physician, who testified the victim had said
Naranjo had touched her chest. Detective Tim Brinson of the Pasadena Police
Department testified, without objection, he had witnessed the victim state Naranjo had
sexually assaulted her by placing his mouth on her sexual organ and by placing his hand
inside her vagina. Because the substance of Milstead's inadmissible testimony was
admitted without objection through other witnesses, we do not believe the error harmed
Naranjo's substantial rights. Naranjo's second point of error is overruled.
 

Conclusion
          For the reasons stated, we overrule Naranjo's points of error and affirm the trial
court's judgment.


                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      February 18, 2004
Date Decided:         March 9, 2004

Do Not Publish