

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00281-CR

DESMOND LEDET                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

## FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant filed an appeal of his sexual assault conviction and twenty-year sentence. He brings five points alleging ineffective assistance of his trial counsel, one point contending that the State used perjured testimony, and one point contending that the evidence is insufficient to support his conviction. We affirm.

---

[1]See Tex. R. App. P. 47.4.

## Sufficiency of the Evidence

In his seventh point, appellant claims that the evidence is insufficient to support his conviction.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

According to appellant, the complainant testified to facts that supported only the offense of aggravated sexual assault, not the lesser-included offense of sexual assault. The complainant testified that appellant approached her in his truck at Jasmine Food Store on East Berry Street in Fort Worth and asked if she wanted a ride; she was walking to find a telephone, so she agreed. She also said that appellant told her he needed to stop at a friend's house along the way. Appellant drove to an apartment complex and left the complainant alone in the truck for about five minutes. When he returned, he drove to the back of the complex, and the complainant started to feel nervous. She told appellant that she would find another way home.

According to the complainant, when she tried to step out of the truck, appellant pulled a gun from the driver's side door, pointed it at her, told her to get back in the truck, and threatened to kill her if she screamed.

2

The complainant testified that appellant told her to pull off her panties; she began to beg him not to "do this." Appellant became more aggressive, pulled off the complainant's panties, ordered her to face backward in the seat, placed his hands around her neck, and forced her to have sex with him. Appellant then got back in the driver's seat and drove off with the complainant still in the truck. She jumped out on a bridge and ran across the street to a pay phone where she called 911.

The evidence shows that police took the complainant to the hospital where hospital personnel performed a sexual assault examination. Semen with unidentified DNA was taken from the complainant's vagina, ankle, and panties and preserved; that DNA was determined to originate from appellant after the complainant identified him in a photo lineup approximately five years later.

This evidence is sufficient to prove the elements of sexual assault: that appellant intentionally or knowingly caused the penetration of the complainant's sexual organ without her consent by compelling her to submit or participate by the use of physical force or violence. See Tex. Penal Code Ann. § 22.011 (West 2011); Horne v. State, 46 S.W.3d 391, 394 (Tex. App.—Fort Worth 2001, pet. ref'd).[2] Moreover, because sexual assault is a lesser-included offense of

---

[2]Appellant contends that because the jury charge submitted instructions on both aggravated sexual assault and sexual assault, and because the jury found him guilty of only sexual assault, the jury effectively acquitted him of using a gun, the aggravating element. The complainant had testified that she did not know whether the gun was real or not, or if it was real, whether it was loaded. Nevertheless, there is sufficient evidence, even without the gun, that appellant

aggravated sexual assault, if the complainant's testimony was sufficient to support the greater offense, her testimony necessarily also proved the lesser offense. *See Wasylina v. State*, 275 S.W.3d 908, 909–10 (Tex. Crim. App. 2009) (explaining difference between whether lesser-included offense instruction warranted and sufficiency of the evidence to prove lesser-included offense). We overrule appellant's seventh point.

**Ineffective Assistance**

In his first through fourth and sixth points, appellant contends that his trial counsel was ineffective.

**Standard of Review**

To establish ineffective assistance of counsel, the appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The issue is whether counsel's assistance was reasonable under all the circumstances and

---

used physical force or violence to compel the complainant to participate without her consent.

prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Salinas*, 163 S.W.3d at 740; *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

5

at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

**Suppression of Pretrial Statements**

Appellant's first through fourth points relate to his second trial counsel's failure to file a motion to suppress statements appellant made to the police in 2009 and that second counsel's failure to pursue a motion to suppress that appellant's prior counsel had filed. According to appellant, his statements to police should have been suppressed because he invoked his Fifth Amendment right to remain silent and because he had invoked his Fifth Amendment right to counsel.

The clerk's record contains a form signed by appellant and the magistrate, entitled, "RIGHT TO COUNSEL," which states, "DO YOU WANT A COURT-APPOINTED LAWYER?" The box that was checked reads as follows:

> YES, I BELIEVE THAT I AM ENTITLED TO AN APPOINTED LAWYER. I have been advised by the court of my right to representation by a lawyer for the charge pending against me. I certify that I am without means to employ a lawyer of my own choosing and I now request the court to select and appoint a lawyer for me. I understand that I may be required to repay Tarrant County for a court-appointed lawyer at a later time, under such terms as a court may determine based on my future financial status.

6

When appellant was later interviewed by officers, without counsel present, they warned him of his *Miranda* rights, but he did not request counsel at that time in connection with the subsequent questioning.

Once a person invokes his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by merely showing that the suspect responded to police-initiated interrogation after being advised of his rights again. *Edwards v. Arizona*, 451 U.S. 477, 485, 101 S. Ct. 1880, 1885 (1981); *Pecina v. State*, 361 S.W.3d 68, 75 (Tex. Crim. App.), *cert. denied*, 133 S. Ct. 256 (2012). This prophylactic rule protects a suspect who has made the decision not to speak to law-enforcement officers without his lawyer and who has clearly communicated that decision to the police from further police badgering. *Pecina*, 361 S.W.3d at 75.

It is the police officer or other law-enforcement agent who administers *Miranda* warnings, and he or she does so immediately before custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S. Ct. 1602, 1612 (1966); *Pecina*, 361 S.W.3d at 75. Thus, the police must give the Fifth Amendment *Miranda* warnings during the process of custodial interrogation but before questioning actually begins. *Miranda*, 384 U.S. at 473–74, 86 S. Ct. at 1627; *Pecina*, 361 S.W.3d at 75–76. But the United States Supreme Court has never accepted the notion of an anticipatory invocation of *Miranda* rights (1) given by someone other than law-enforcement officers or other state agents or (2) outside the context of custodial interrogation. *McNeil v. Wisconsin*, 501

7

U.S. 171, 182 n.3, 111 S. Ct. 2204, 2211 n.3 (1991); *Pecina*, 361 S.W.3d at 76. A preliminary hearing will not usually involve such a custodial interrogation context. *McNeil*, 501 U.S. at 182 n.3, 111 S. Ct. at 2211 n.3; *Pecina*, 361 S.W.3d at 76.

Thus, "a defendant who does not want to speak to the police without counsel present need only say as much when he is first approached and given the *Miranda* warnings." *Montejo v. Louisiana*, 556 U.S. 778, 794, 129 S. Ct. 2079, 2090 (2009). And if he does invoke his Fifth Amendment right to counsel, "not only must the immediate contact end, but 'badgering' by later requests is prohibited." *Id.* at 794–95, 129 S. Ct. at 2090.

Because there is no evidence that appellant invoked his Fifth Amendment right to have counsel present for police questioning during the course of a custodial interrogation, under the Court of Criminal Appeals's analysis of this issue in *Pecina*, he would not have prevailed on a motion to suppress on the ground he raises in his appeal; thus, counsel was not ineffective under *Strickland* for failing to pursue a motion to suppress on that basis. *See Pecina*, 361 S.W.3d at 76; *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998). Moreover, even if counsel had pursued such a motion and prevailed, there is not a reasonable probability the outcome of the trial would have been different. *See, infra*, Majority Op. at 10–11.

Contrary to the concurring opinion's claim that our opinion is advisory as it relates to addressing the likely success of his motion to suppress, appellant

8

raises the point in the context of his claim of ineffective assistance of counsel. As the concurrence knows, under *Strickland*, this requires us to evaluate whether but for counsel's alleged errors, the result of the proceeding would be different. *Strickland*, 466 U.S. at 687, 694, 104 S. Ct. at 2064, 2068. As the Supreme Court stated in *Strickland*,

> there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697, 104 S. Ct. at 2069; *see also Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App.) ("The two prongs of *Strickland* need not be analyzed in a particular order . . . ."), *cert. denied*, 131 S. Ct. 3073 (2011); *Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009) (declining to analyze whether first prong of *Strickland* met because second prong was not). And *Thompson* specifically states that the failure to make the required showing of "*either* deficient performance *or* sufficient prejudice defeats the ineffectiveness claim." *Thompson*, 9 S.W.3d at 813 (emphasis added).

While the concurring opinion is correct that appellant's motion to suppress was not litigated at trial, we are required to evaluate its likely success to evaluate

9

appellant's point on appeal: counsel's effectiveness in light of his failure to pursue the motion to suppress at trial. Thus, our opinion on the likelihood of the success of that motion is not advisory. *See Smith*, 286 S.W.3d at 342.

We overrule appellant's first point.

In his second through fourth points, appellant contends counsel was ineffective for failing to object to, and move to suppress, the part of the interview in which he invoked his right to terminate the interview. The State concedes that appellant did so and agrees that "the portion of the tape in which [a]ppellant invokes his right to terminate the interview was not admissible before the jury." But the State contends that, nevertheless, trial counsel was not ineffective because his decision not to object could have been based on reasonable trial strategy.

When the detectives told appellant they were going to check his DNA, appellant very clearly told them that he ended and cancelled the interview. Nevertheless, the detectives continued to question him, and he continued to deny knowing or having committed an offense against the complainant. Appellant's counsel did not object to the playing of the part of the interview that included appellant's termination of the interview and his subsequent denial of the detectives' allegations that he sexually assaulted the complainant. The State emphasized appellant's denial in its closing argument by contrasting it with appellant's testimony at trial that he had consensual sex with her.

Regardless of the fact that part of the interview was inadmissible, we do not believe that the outcome of the proceedings would have been any different. The issue of whether the complainant consented was highly disputed at trial. As appellant points out, the jury had to decide whether they believed appellant's testimony or the complainant's; the DNA evidence merely confirmed that the sex did occur. Thus, any evidence tending to impeach appellant's credibility was highly probative. But appellant was able to explain extensively during his testimony that he did not recognize the photograph of the complainant shown to him by the detectives during the interview.[3] Also, Detective O'Brien admitted on cross-examination that he had shown appellant a more recent driver's license photo of the complainant, that the detective did not know what she looked like in 2004, and that appellant could have been unable to identify her for that reason. Appellant was also able to explain that because of the passage of time, the complainant had gained a significant amount of weight; thus, he did not recognize her in the interview. The complainant had previously testified that she had gained weight since the sexual assault. Defense counsel discussed the matter during closing argument, pointing to appellant's testimony that his failure to initially recognize the complainant was a mistake and that appellant had later written a letter to the district attorney's office stating that he had previously been mistaken. Accordingly, appellant's counsel had the opportunity to neutralize the

---

[3]He also stated a couple of times in the interview that he had no memory of the complainant.

11

impact of the State's use of appellant's statement, bringing the issue back to the jury's choice over whom to believe; the jury chose the complainant. For this reason, appellant has not shown that but for counsel's failure to so object, there is a reasonable probability that the outcome of the trial would have been different.

Moreover, we do not believe that there is a reasonable probability the trial's result would have been changed had counsel been able to exclude the part of the interview in which appellant invoked his right to terminate it. Appellant's statements after he invoked his right were no different than his statements prior to doing so; he continued to deny knowing or having sex with the complainant. In fact, he accused the detectives of lying when they told him they knew what he had done. Thus, the record does not show a reasonable probability that the outcome of the trial would have been different had counsel been successful in having that part of the statement excluded. *See Ali v. State*, 26 S.W.3d 82, 88 (Tex. App.—Waco 2000, no pet.); *see also Lykins v. State*, 784 S.W.2d 32, 34–36 (Tex. Crim. App. 1989) (holding that statements taken in violation of *Miranda* and article 38.22 could be used to impeach defendant).

Contrary to the concurring opinion's assertion, we are not approving mistakes by the police and prosecutor "by our silence." Concurring Op. at 1. Nor have we looked for a way "to justify the actions of either the State or the defense." *Id.* We are simply following the law and higher courts' precedent, which we are required to do. *Sierra v. State*, 157 S.W.3d 52, 60 (Tex. App.—

12

Fort Worth 2004) (op. on reh'g), *aff'd*, 218 S.W.3d 85 (Tex. Crim. App. 2007); *see Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex. 1964) (holding that a state intermediate appellate court is bound to follow precedent of the highest courts of the state). Moreover, the State itself concedes that part of the interview was inadmissible because the police should have ended it after appellant said he wanted to end it, a fact that we have clearly pointed out in our opinion.

We overrule appellant's second through fourth points.

**Failure to Object to Prosecutor's *Wheel of Fortune* Example**

In his sixth point, appellant contends that his trial counsel was ineffective because he did not object or seek curative instructions but instead

> allowed the State to indoctrinate . . . [the] jury with a prejudicial definition of proof beyond a reasonable doubt using the Wheel of Fortune as an example, which violated [a]ppellant[']s [constitutional] right to a fair trial, the due process right to be convicted of proof of all the elements [necessary] to constitute an offense beyond a reasonable doubt, the right to an impartial tribunal, lessened the State[']s burden of proof and tainted [a]ppellant[']s "presumption of innocence[.]"

During voir dire, the State used the following example to explain the concept of proof beyond a reasonable doubt:

> [STATE]: . . . Judge Vick mentioned this, and these are rights that are based on our [C]onstitution. We all have these rights. If we were committed - - convicted of a crime, accused of a crime, we each and every one have these rights. If you get a traffic ticket, you still have these rights.
>
> A defendant has a presumption of innocence, and that stays with him until and unless we prove beyond a reasonable doubt that he is guilty.

13

It's our burden, it's always our job to bring evidence, but it's not beyond all doubt. It's not a hundred percent.

[Juror], how could I prove something to you beyond any question whatsoever?

[JUROR]: Evidence.

[STATE]: Okay. But, I mean, you'd still have a question in your mind, wouldn't you? Because you don't know these people, right?

[JUROR]: Right.

[STATE]: I mean, you have to make the best decision you can. So to prove it to you beyond all doubt, [Second Juror]? . . .

. . . .

[STATE]: How could I prove it to you beyond all doubt, to get any doubt out of your mind?

[SECOND JUROR]: I'm not sure. I'd have to see - - I'd have to see a big picture of all the evidence and then make a decision. You know, just talking, I don't know what would be in my mind. I would have to see everything to come up with that.

[STATE]: Okay. Thank you.

For most people, it's like, you know, I'm going to have to see it. I'm going to have to see it with my own eyes to have no doubt whatsoever.

And so, you know, until they invent my time machine and I can take every one of y'all back to the crime itself and let y'all see it, this is the standard we have. There's no way I could ever prove to anyone beyond all doubt. So this is the burden that we have. Because if y'all saw the crime, you wouldn't be able to be jurors, would you? You would be witnesses. I'd have a lot of good witnesses.

So it's not certainty. It's somewhere short of that. Where are my Wheel of Fortune watchers?

14

(Hands raised)

[STATE]: Oh, come on. I'm not the only one that watches that show, am I? I got through law school on this thing. [Third Juror].

[THIRD JUROR]: I love Wheel of Fortune.

[STATE]: Okay. Wheel of Fortune. Vanna turns the letter over as people guess and say, give me an M, she'll turn letters over. And at some point before the puzzle is complete, usually you can guess it. All the letters might not be turned over, but you know what it says, you know what the answer is.

Tim had a hard time with the second one, but he got the first one. We had Julia Roberts. The thrill of victory and the agony of defeat, that's an old one. So at some point before you get all the letters you know what the answer is. Is it [Fourth Juror]?

. . . .

[STATE]: Would you agree with that?

[FOURTH JUROR]: That at a certain point all reasonable doubt is gone or - -

[STATE]: At a certain point the picture becomes clear.

[FOURTH JUROR]: Yes.

[STATE]: At some point it's earlier than others. You can guess what the - - what it is before you get very many letters. Sometimes you need almost all of them.

[FOURTH JUROR]: It's always good to have all of them.

[STATE]: Yeah. It's always good to have all of them, but sometimes you don't. Are you comfortable making a decision without all the letters?

[FOURTH JUROR]: Not a hundred percent sure on that one. I would have to, like I say, see all the evidence, see what kind of light it's presented in.

15

[STATE]:  Okay.  Anyone else who just doesn't think they would be able to do that?  You're going to have to have all doubt removed?

Okay.  I'm going to - - don't see any hands or any head nods.

[Fifth Juror].

[FIFTH JUROR]:  Yes.

[STATE]:  Are you comfortable with making a decision maybe if you still have questions, but you're to the point where you're beyond a reasonable doubt?

[FIFTH JUROR]:  If I'm to the point beyond a reasonable doubt, then I feel comfortable making a decision.

[STATE]:  Okay.  Thank you.

Appellant contends that the prosecutor's use of the word "letters" in the analogy encouraged the jury to convict even if all of the elements of the offense were not proved.

The use of a hypothetical fact situation during voir dire is permissible if it is used "to explain the application of the law."  *Atkins v. State*, 951 S.W.2d 787, 789 (Tex. Crim. App. 1997); *Lee v. State*, 176 S.W.3d 452, 461 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006).  Because the court of criminal appeals has held that the better practice is for the trial court not to give a definition of reasonable doubt to the jury, it is permissible for the State to inquire into the jury's understanding of the parameters of that burden of proof. *Fuller v. State*, 363 S.W.3d 583, 586 (Tex. Crim. App. 2012); *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000); *Wilder v. State*, 111 S.W.3d 249, 252–53 (Tex. App.—Texarkana 2003, pet. ref'd) (holding that prosecutor's

16

explanation that State did not have to prove one hundred percent certainty was permissible).  This area of inquiry is designed not to "assign a precise meaning" to the term "beyond a reasonable doubt," which is left to the jurors themselves to apply in their own common sense understanding, but instead is to test whether the prospective jury members will hold the State to an impermissibly high or low burden of proof.  *Fuller*, 363 S.W.3d at 587.

Here, the prosecutor's colloquy with the panel shows that she was engaging in a permissible inquiry into the prospective jurors' understanding of the proper parameters of the beyond a reasonable doubt burden of proof and how that relates to using circumstantial evidence to prove a case.  It does not show that the State was urging the prospective jurors that they could convict upon less than the appropriate standard or if not all of the elements were proven.  *See id.*; *Wilder*, 111 S.W.3d at 252–53.  Regardless, even if counsel could be considered deficient for failing to object to this hypothetical, the court's charge properly instructed the jury that it must find "each and every element of the offense charged beyond a reasonable doubt" to convict; thus, we cannot say that such a failure would have affected the trial's outcome.

Accordingly, we conclude and hold that counsel was not ineffective by not objecting to the *Wheel of Fortune* hypothetical and that even if he was, the outcome of the trial would not have been different.  We overrule appellant's sixth point.

17

## Alleged Use of Perjured Testimony

In his fifth point, appellant claims that the State knowingly used the perjured testimony of the complainant because of inconsistencies between her testimony at trial and what she told officers after the sexual assault. Appellant did not preserve this argument for review. *See* Tex. R. App. P. 33.1(a)(1); *Devoe v. State*, 354 S.W.3d 457, 472 (Tex. Crim. App. 2011). Additionally, to the extent his complaint might encompass his counsel's failure to so object, there is no evidence or other indication in the record that the complainant lied in her testimony as opposed to her being mistaken, having remembered additional details that she did not initially tell the police, or having a hazy memory of details. *See Ex parte Chabot*, 300 S.W.3d 768, 771 (Tex. Crim. App. 2009); *Vasquez v. State*, 67 S.W.3d 229, 239 (Tex. Crim. App. 2002). In fact, counsel questioned one of the investigating detectives about apparent inconsistencies in the complainant's testimony. We overrule appellant's fifth point.

**Conclusion**

Having overruled all of appellant's points, we affirm the trial court's judgment.

PER CURIAM

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DAUPHINOT, J., filed a concurring opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 2, 2013